POTTS, et al. *v.* LOWERY

No. 42030          November 20, 1961          134 So. 2d 474

*George J. Thornton,* Kosciusko; *Watkins & Eager,* Jackson, for appellants.

*Crawley & Ford,* Kosciusko, for appellee.

APPELLANT IN REPLY.

Lee, P. J.

This is an appeal by Hugh Potts, d.b.a. Potts Motor Company, and its insurer, from a judgment of the circuit court which affirmed an order of the Workmen's Compensation Commission, awarding to H. C. Lowery permanent partial compensation and other incidental benefits under the provisions of the workmen's compensation law.

It will be obvious, from a statement of the facts, that the claimant is clearly entitled to the benefits which were awarded to him. The solution of the problem here depends on the simple question as to whether this liability rests on the appellant-insurer or the succeeding carrier, which assumed coverage on this business on April 20, 1958, after the appellant-carrier had cancelled its policy thereon.

It is the contention of the appellant-insurer that the effect of the original injury to the claimant had abated and was dormant at the time of its cancellation; that thereafter the disability and operation, for which the claimant was awarded benefits, resulted from a re-injury or aggravation of his pre-existing condition; and, for that reason, it is not liable for payment of such benefits.

H. C. Lowery, forty-seven years of age, was an experienced mechanic. He had been employed for several years in that capacity by Potts Motor Company. On Friday, May 24, 1957, while repairing an automobile, the two-foot can, upon which he was standing, slipped from under him and caused him to fall upon the motor

of the car. At that time, he felt "something popping" in his neck. Although he suffered some discomfiture, he finished the day's work and also worked a part of the following day. On Sunday, he entered the hospital in Kosciusko and he was visited that day by appellant, Hugh Potts. Dr. Paul E. Mink, after a thorough examination, diagnosed the trouble as a protruding intervertebral disc, and placed the patient in traction. Realizing that this case was properly one for a specialist, the doctor referred him to Dr. Orlando J. Andy, professor of neurosurgery at the University of Mississippi Medical Center in Jackson; and on May 31st, the patient was transferred to that hospital. Dr. Andy, from his examination, found that Lowery had suffered a ruptured cervical disc. X-rays and studies confirmed that the trouble was between the sixth and seventh cervical discs. Dr. Andy, being of the opinion that the chances were fifty-fifty that successful treatment could be affected by therapy with traction and without operative procedure at the time, adopted that course and pursued the same for a period of ten days.

Lowery was then permitted to return home where he continued to wear a collar on his neck and traction by weights on his limbs. His condition worsened, and, on June 21st, he was hospitalized for treatment until July 3rd. Under advice of his doctors to perform light work with great care, he returned to the job the latter part of July and was so engaged for about three months. In November, during a four-day period, he was unable to work at all. From time to time, including October 21st, Dr. Mink had observed the existence of the same symptoms.

Milton Moore, a fellow worker, who gave corroboration as to the manner in which the accident occurred, observed that Lowery appeared to have lost part of the use of his neck and shoulders, and said that he complained all of the time about his trouble. In his opinion,

Lowery's capability to work had been affected forty to fifty percent. Hugh Ellington, the company service manager, estimated that Lowery's ability to perform had been impaired twenty-five percent, and said that he often complained of pain and would be out, and that his condition seemed to be chronic.

At all times during his work, and even on other occasions, Lowery wore the collar for support of his neck, and, nearly every night, kept himself in traction at home. During the period from the date of the injury until the time of his operation, and subsequently, it was necessary for him to take large amounts of aspirin, B. C.'s, and, at times, narcotics, for the relief of pain.

On September 1, 1958, it was necessary for Lowery to return to the hospital in Kosciusko for treatment for about a week. He went back to work on September 16th. Later, after examination and consultation with Dr. Andy, Lowery entered the University Hospital, where he submitted to an operation by Dr. Andy on November 16th. He was discharged from the hospital on November 29th, and went back to work for Potts Motor Company on January 5, 1959.

In the final medical report dated October 22, 1957, which must be mailed to the company on the day treatment terminates, Dr. Mink stated ''There is still residual tenderness in the neck. The defect remains and will likely recur.'' In addition, he also said ''Patient discharged BUT NOT AS CURED'', with the capitalized expression typed in red.

In the opinion of Dr. Mink, the condition at the time of the operation was a mere recurrence of the condition following the original injury. A re-injury and a recurrence, as brought out in the questioning, was one and the same thing. It was ''a flaring of the original disease process caused by — He may not have done anything, it may have just occurred.'' He had never heard of any separate and distinct trauma. ''There was no physical

or structural difference in his cervical spine in 1958 from that which was precipitated in May 1957 * * * The same identical condition obtains.''

Dr. Andy testified that definitely the injury, which he corrected by surgery, was the one which Lowery sustained at the time he was working on the car. He conceded that there were temporary alleviations of this trouble, but that ''the typical history is usually recurrence irrelative of what a patient is doing''; that Lowery complained of many episodes of pain while working; and that the condition could have been aggravated by merely turning the neck while in bed. The pre-existing condition and the symptoms are two separate entities. One would not necessarily have to have an aggravation of the condition in order to have recurrence of the symptoms. He could suffer no aggravation of the condition whatsoever and yet have recurrence of the manifestation of pain. He was positive in his opinion that the defect, sustained as a result of the incident in May 1957, was the defect which was responsible for the episodes of pain and subsequent disability experienced during the course of his employment with Potts Motor Company. He rated the disability as at least twenty percent in respect to the whole man, and was of the opinion that, for all practical purposes, Lowery had attained maximum recovery.

■■■ The claimant, as a general proposition, has the burden of proof. He must meet this burden by showing an accidental injury arising out of and in the course of employment and causal connection between the injury and the claimed disability. In Dunn's Miss. Workmen's Compensation, Sec. 163, p. 124 and at p. 81 of the 1960 Supplement, the author catalogues many cases which uphold the foregoing principle, commencing with T. H. Mastin and Company v. Mangum, 215 Miss. 454, 61 So. 2d 298 (1954), and running through Winters Hardwood Dimension Company v. Dependents of Dave

Harris, 236 Miss. 757, 112 So. 2d 227 (1959). Consequently this question is now settled beyond controversy.

In the case of Komp Equipment Company v. Clinton, 236 Miss. 560, 111 So. 2d 259, the claimant, because of exposure to Orangeburg or soil pipe, to which he was allergic, suffered a disability on account of contact dermatitis. Several treatments, from time to time, alleviated the condition temporarily, but the claimant had "never been cured of the dermatitis which he had at the time he was discharged by his employer." This Court there laid down this rule: "After the dermatitis has been cured, benefits are no longer payable, *but recurrences which are attributable to and are connected with the first exposure of the employment are compensable by the employer for whom claimant was working when the infection first began.* Ernest Waters Construction Co. v. Mills, 51 So. 2d 180, (Fla. 1951); Zeady v. Arms Textile Manufacturing Company, 96 N. H. 328, 76 Atl. 2d 512 (1950); 2 Larson, Workmen's Compensation Law, page 30, Sec. 95.26; but cf. Nay v. King-Seeley Corporation, 339 Mich. 140, 62 N. W. 2d 631 (1954); see also 4 Sneider, Workmen's Compensation (1945) Sec. 1337, pp. 632-641; 3 Sneider, Ibid., Sec. 953, pp. 527-528." (Emphasis supplied.)

It was pointed out in the opinion in Ernest Waters Construction Company v. Mills, listed in the citations, supra, that: "The burden was on the claimant to show that his total incapacity between September 1947 and his subsequent incapacities resulted from the first attack and not from some independent intervening cause." Cf. L. B. Priester & Sons v. McGee, 234 Miss. 471, 106 So. 2d 394.

It is thus seen that the claimant, by the evidence, fully met the burden which devolved upon him by showing causal connection between the original injury and his claimed disability. It was proved beyond doubt that the injury, resulting from the incident of May 24, 1957, was

directly responsible for the claimant's condition. This is not a case where a cure had been effected and some independent intervening cause lighted it up anew. It never subsided or became abated or dormant. It was active and persistent throughout the period here under consideration. The Commission was clearly right in its award — there was no substantial basis upon which it could have done otherwise.

In this connection, it should be said that the insurer knew, or ought to have known, when the final medical report was filed, that no cure had been effected, and that recurrences were anticipated. Besides, it also knew that Lowery had refused to sign the B-31 Form, and that, when it was filed with the Commission, it had not been signed by him. When it did nothing whatever to keep up with the status of the injured employee, it is now rather far fetched indeed to claim that it has been prejudiced because Lowery did not notify it from time to time about his condition.

The appellant cites Rathborne, Hair & Ridgeway Box Company v. Green, 237 Miss. 588, 115 So. 2d 674, Lloyd Ford Company v. Price, 240 Miss. 250, 126 So. 2d 529, Malone v. Ingalls Shipbuilding Corporation, 240 Miss. 319, 127 So. 2d 403, and Parker v. United Gas Corporation, 240 Miss. 351, 127 So. 2d 438, and says that, under those cases, the Commission erred in making its award here.

In all of those cited cases, the continuances of the disability, or whether it had subsided, or had abated or was dormant — these questions raised disputed issues of fact. In each instance, the Commission resolved the issues of fact against the claimants. In the Green and Price cases, supra, the circuit courts reversed the orders of the Commission, and this Court reversed the judgments of those courts and reinstated the orders of the Commission for the reason that there was substantial evidence to sustain them. In the Parker and

Malone cases, supra, awards were denied and that action, in both instances, was affirmed by both the circuit court and by this Court. The distinction therefore between those cases and the present case is simply this: The Commission, in those cases, with disputed factual situations, denied awards or the items thereof controverted. This Court held that under such circumstances, it could not reverse the orders of the Commission. In the present case, the Commission, guided by the overwhelming weight of the evidence, made the award — the only order that it would have been justified in making under the evidence.

■■■ Consequently, since the proof showed, and the Commission found, that the disability for which the award was made, together with the attendant benefits, resulted from the original compensable injury, and was not therefore due to aggravation of a pre-existing condition, it follows that the judgment of the circuit court must be, in all respects, affirmed.

Affirmed, and remanded to the Commission.

*Kyle, Arrington, Ethridge* and *McElroy, JJ.,* concur.