555 So.2d 1017 (1990)
R.C. PETROLEUM, INC. and the Travelers Insurance Company
v.
Ms. Prudence HERNANDEZ.
No. 07-CC-58662.
Supreme Court of Mississippi.
January 10, 1990.
*1019 Robert J. Arnold, III, Gary K. Jones, Daniel Coker Horton & Bell, Jackson, for appellants.
R.L. Netterville, David C. Bramlette, III, Adams Foreman Truly Smith & Bramlette, Natchez, for appellee.
Before ROY NOBLE LEE, C.J., and ANDERSON and PRATHER, JJ.
PRATHER, Justice, for the Court:

I. FACTUAL BACKGROUND
Prudence Hernandez was injured in an automobile accident while acting within the scope of her employment. On October 24, 1983, she filed a "Motion to Controvert"  seeking recovery from her former employer, R.C. Petroleum, Inc., and its carrier, The Travelers Insurance Company [hereinafter collectively referred to as Petroleum]. Petroleum denied Hernandez's allegation that she sustained any disability or loss of wage-earning capacity.
On August 6, 1985, after three hearings were held on the motion,[1] the Administrative Judge made the following fact-finding:
1. That on or about September 15, 1982, the claimant sustained a compensable injury while performing services in the course of her employment by the employer herein, R.C. Petroleum, Inc., and that the employer received adequate and legally sufficient notice of the claimant's injury in this case;
2. That on or about September 15, 1982, the claimant's average weekly wage was $237.23;
3. That the medical evidence in this case is insufficient to establish the duration of the claimant's temporary disability, if any, or the date the claimant reached maximum medical recovery and/or the nature, extent and degree of the claimant's permanent disability or permanent impairment, if any, and, therefore, that the claimant's claim for temporary compensation benefits and permanent compensation benefits is hereby denied; and
4. That, however, the defendants are liable for the medical, hospital, and related services and supplies resulting from treatment of the claimant by Drs. Herrington, Perez, Dewberry, Duncan, Mack, and DeCamp, and this Administrative Judge hereby orders the defendants to honor and pay for the medical services of a competent neurosurgeon and/or orthopedic surgeon and a general practice or family physician located near the claimant's residence in the State of California and this Administrative Judge specifically finds that until such time as extensive, complicated and expensive diagnostic tests, such as myelograms, etc. are performed on the claimant, it is impossible for any person to determine if the claimant has sustained any permanent impairment or permanent disability as a result of the September 15, 1982 injury.
Based on its fact-finding, which was substantiated through a lengthy written evaluation *1020 of the evidence, the Administrative Judge ordered Petroleum to pay for and provide all "medical, hospital, and related services and supplies required to treat and finally ascertain the nature of [the] injury, if any," and Hernandez's claim for temporary and permanent compensation benefits was "dismissed with prejudice."
This decision was appealed and cross-appealed. On October 31, 1985, after a review hearing was held, the Mississippi Workers' Compensation Commission [hereinafter Commission] determined that the judge's decision contains no "error of fact or law," and affirmed.
The Commission's decision was appealed and cross-appealed. The Adams County Circuit Court reversed and remanded. Specifically, the circuit court determined: (1) "that the medical evidence ... is uncontradicted, undisputed, and therefore, should be taken as true"; (2) "that [Hernandez] had no trouble before this accident in doing her work, that she was a good employee [and t]hat since the accident, [her] condition has worsened to the point that [her] mobility and ability to function has deteriorated substantially"; (3) "that [Hernandez] established by the testimony that [she] was totally disabled from the date she left the company until the date of the hearing"; (4) "that [Hernandez's] maximum medical recovery must be ascertained before the medical experts can determine and ascertain if there is permanent disability and, if so, how much, and if there is loss of wage earning capacity, how much"; (5) "that ... the ... Commission [shall make a] determination of [Petroleum's] liability for medical, hospital and related services, diagnostic tests, medical supplies and procedures for past treatment ... together with all such expenses required for treatment until such time as [Hernandez] reaches maximum medical recovery"; and (6) "[t]hat [Petroleum] shall pay unto [Hernandez] all sums due for temporary total disability ... plus all costs of this action."
On August 28, 1987, Petroleum appealed the circuit court's decision and, on January 26, 1988, presented the following issues for disposition by this Court:
1. The finding of fact by the Administrative Judge and the Full Commission that there is insufficient medical testimony to support a claim for temporary or total disability is supported by substantial credible evidence and, therefore, the Circuit Court was in error in reversing the Commission's order. Furthermore, the denial of the claim for disability benefits is supported by the preponderance of the credible evidence and the Circuit Court was in error in reversing the denial of benefits; and
2. The Administrative Judge and Full Commission erred in compelling the employer and carrier to pay the medical bills of Dr. Jose Francisco Magana Perez of Tijuana, Mexico as to treatment by Dr. Perez is neither authorized under the terms of the Act nor was the treatment reasonable as required by the Act.

II. ANALYSIS
This analysis comprises three sections. Applicable workers' compensation law is noted in the initial section. The next section deals with the first issue presented on appeal (i.e., whether reversal of the Commission's decision was an error). The last section deals with the second issue (i.e., whether treatment by the Mexican physician was authorized or reasonable).

A. Workers' Compensation Law: A General Overview
In a workers' compensation action in which a disability is alleged, the claimant bears the burden to prove by a "clear preponderance" each element of the claim. See Bracey v. Packard Elec. Div., Gen. Motors Co., 476 So.2d 28, 29 (Miss. 1985) (Commission's "inartfully-drawn" statement, that claimant was required to "prove her claim by a fair preponderance of the evidence and to a legal certainty," "simply restates the requirement that a recovery must be based upon reasonable probabilities and not mere possibilities"); El Patio Motor Court, Inc. v. Long's Dependents, 242 Miss. 294, 134 So.2d 437 (1961); see also Narkeeta, Inc. v. McCoy, 247 Miss. 65, 153 So.2d 798 (Miss. 1963) (claimant cannot leave any questions which may be answered *1021 through speculation only). These elements include: (1) an injury, (2) occurrence within the scope of the claimant's employment, (3) a disability, (4) causal relationship between the injury and disability. See Potts v. Lowery, 242 Miss. 300, 134 So.2d 474 (Miss. 1961); see also American Potash & Chemical Corp. v. Rea, 228 So.2d 867 (Miss. 1969) (claimant must establish extent of disability); Wiggins v. Knox Glass, Inc., 219 So.2d 154 (Miss. 1969) (question of degree and duration of disability is one of fact).
Circumstantial evidence may be used to establish the elements. L.B. Priester & Son, Inc. v. Bynum's Dependents, 247 Miss. 664, 157 So.2d 399 (1963). However, medical testimony is generally necessary to secure an award for any degree of disability. Davis v. Scotch Plywood Co. of Miss., 505 So.2d 1192 (Miss. 1987) (burden of proof is not often met through the claimant's testimony alone); see also Penrod Drilling Co. v. Etheridge, 487 So.2d 1330 (Miss. 1986) (Medical testimony does not go to liability; rather, it goes to the extent of the disability.). Medical testimony need not actually prove disability; it may merely be supportive. Marshall Durbin, Inc. v. Hall, 490 So.2d 877 (Miss. 1986); Delta Drilling Co. v. Cannette, 489 So.2d 1378 (Miss. 1986); Hall of Miss., Inc. v. Green, 467 So.2d 935 (Miss. 1985); see also MISS. CODE ANN. § 71-3-3(i) (1972 & Supp. 1988). Lay testimony may be presented as proof supplemental to medical testimony. Medart Lockers, Inc. v. Yarbrough, 251 Miss. 124, 168 So.2d 660 (1964). The probative value of any witness' testimony is for the fact-finder to determine. Johnson v. Gulfport Laundry & Cleaning Co., 249 Miss. 11, 162 So.2d 859 (1964); see, e.g., McManus v. Southern United Ice Co., 243 Miss. 576, 138 So.2d 899 (1962) (case in which Supreme Court upheld a finding of 100% loss of use of hand on basis of lay testimony even though medical testimony indicated only a 20% loss).
In workers' compensation cases, the Commission is the ultimate fact-finder. Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437 (Miss. 1985); Valley Dry Goods Co. v. Odom, 244 Miss. 125, 141 So.2d 254 (1962). Thus, the Commission is empowered to accept or reject the Administrative Judge's findings. Day-Brite Lighting Div., Emerson Elec. Co. v. Cummings, 419 So.2d 211 (Miss. 1982).
The circuit court is the intermediate appellate court in an appeal of the Commission's fact-finding. Bynum's Dependents, 247 Miss. at 664, 157 So.2d at 399; see also Sonford Prods. Corp. v. Freels, 495 So.2d 468 (Miss. 1986) (to avoid unnecessary expense and delay, Supreme Court may grant an appeal from Commission interlocutory order); Ingalls Shipbuilding Corp. v. Neuman, 322 F. Supp. 1229 (S.D.Miss. 1970), aff'd, 448 F.2d 773 (5th Cir.1971) (issues presented to circuit court for disposition must have been raised before Commission or they will be deemed waived); Sawyer v. Head, 510 So.2d 472 (Miss. 1987). The court may review questions of law or fact. Roberts v. Jr. Food Mart, 308 So.2d 232 (Miss. 1975); MISS. CODE ANN. § 71-3-51 (1972); but see Sam Jones Casing Crews v. Skipper's Dependents, 199 So.2d 436 (Miss. 1967) (court review limited to question of law).
A "considerable body of authority supports the proposition" that the Commission's fact-finding, if supported by substantial evidence, "must" remain undisturbed by the reviewing court. Myles v. Rockwell Int'l, 445 So.2d 528, 536 (Miss. 1983); see, e.g., Robinson v. Packard Elec. Div., Gen. Motors Corp., 523 So.2d 329 (Miss. 1988); Penrod Drilling Co. v. Etheridge, 487 So.2d 1330 (Miss. 1986); Charles N. Clark Assocs., Ltd. v. Robinson's Dependents, 357 So.2d 924 (Miss. 1978); Nassar v. Latex Constr. Co. of Ga., 256 So.2d 204 (Miss. 1971); Miller Transporters, Ltd. v. Dean, 254 Miss. 1, 179 So.2d 552 (1965); Malley v. Over the Top, Inc., 229 Miss. 347, 90 So.2d 678 (1956) (a seminal case in which the "substantial evidence" rule was espoused). Of utmost importance, "if th[e fact-finding is] based on substantial ... evidence[, the reviewing court] lack[s] the power to disturb them, even though that evidence would not convince [the court] were [it] the factfinder [sic]." Chandler, *1022 475 So.2d at 439 (citing South Cent. Bell Tel. Co. v. Aden, 474 So.2d 584, 589, 590 (Miss. 1985) (emphasis added)).
To reiterate, if the fact-finding is based on substantial evidence, the reviewing court lacks the power to reverse  even though that evidence would not convince the court were it the fact-finder. See Chandler, 475 So.2d at 439 (citing South Cent. Bell Tel. Co., 474 So.2d 584, 589, 590 (Miss. 1985)).

B. Issue: Whether the Circuit Court Decision Is Correct
The Commission's fact-finding was based on a meticulous evaluation of the evidence adduced during discovery and the subsequent hearings on the motion to controvert. Examination of the record reveals that the Commission's evaluation of the evidence is fair and accurate. The circuit court's reversal of the fact-finding, on the other hand, was based on conclusions which lacked general or specific support. Without such support, and upon perusing the evaluation and the content of the record, this Court concludes that the Commission's fact-finding meets the substantial evidence test prescribed here. The circuit court's reversal was, therefore, improper.
In reversing a Commission's fact-finding, reviewing courts are advised to provide detailed, written support for their conclusions.

C. Issue: Whether Dr. Perez's Treatment of Hernandez Was Authorized and Reasonable
Petroleum contends that Dr. Jose Francisco Magana Perez, one of numerous physicians who treated Hernandez for her injury, was unauthorized pursuant to the dictates of Mississippi Workers' Compensation General Rule 9:
SELECTION OF MEDICAL. The employer shall select competent physicians, hospitals, and other attendance or treatment and immediately furnish such services including all emergency services to the injured employee. The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select a competent physician of his choosing to administer medical treatment. Such physician selected by the employer or the employee shall be located in an area reasonably convenient to the place of the injury or the residence of the injured employee, and the physician's services shall be reasonably suited in the nature of the injury. A competent physician shall mean a licensed medical doctor.

See WORKERS' COMPENSATION LAW OF MISSISSIPPI 39-40 (1984) (emphasis added by Petroleum). Specifically, Petroleum contends that, because Perez is licensed to practice medicine in Mexico and not in the United States, his treatment of Hernandez was violative of General Rule 9. Moreover, because Perez's office is located in Tijuana, Mexico, and not near Hernandez's residences[2]or the place of injury, securement of his services was violative of Rule 9's "convenience" requirement. And finally, Petroleum contends that Perez's treatment of Hernandez was "not reasonable under the terms of the Act." These contentions are unpersuasive.
Rule 9 does not expressly prohibit treatment of an employee's injury by a physician who is licensed to practice medicine in countries other than the United States. That some injuries may require treatment by a specialist located outside the United States is not inconceivable. Literally interpreted, the rule merely requires that the physician be licensed. This rule, however, should not be liberally construed to mean that Mississippi's doors are hereby opened wide to any physician so long as he is licensed somewhere in the world. Once licensure is established, the focus should turn, if necessary, to establishment of the physician's competence. Contrary to what the last line of Rule 9 implies, "competence" is not interchangeable with "licensure." For example, the Commission or a trial court could determine that a licensed general surgeon was not competent to provide *1023 treatment for an injury, or to render an opinion on a matter, requiring the expertise of a dental surgeon. In addition, a physician licensed in one state could, nonetheless, be found incompetent on the basis that he was "de-licensed" in three other states for committing egregious acts of malpractice. Once competence of the selected physician is established, the focus should then turn, if necessary, to the issue of reasonableness of employing a physician allegedly located outside the "realm of convenience." The boundaries of the "realm of convenience" can only be determined on a case-by-case basis. For example, the Commission may conclude in one case that the boundary reasonably extended over seven hundred miles to Charleston, South Carolina, where a renowned hospital specializing in treatment of burn victims is located. In another case, the Commission may find that a competent specialist could have been located in Mississippi and, therefore, the boundary line should not have extended beyond the State's border.
In the case sub judice, Perez's licensure and competence are not issues of dispute. The record reveals that Perez is a general surgeon licensed to practice medicine in Mexico. His educational background and work experience in medicine is extensive. His studies and specialties deal with, or have dealt with, trauma and orthopedics  which are relevant to Hernandez's injuries.
Contrary to Petroleum's contention, the Rule 9 "realm of convenience" test was met. The Commission found that Hernandez was unable to "obtain an appointment to be examined by a competent physician in Natchez, Mississippi." Therefore, she returned to her original hometown of Los Angeles, California  to which Perez's Tijuana office was not determined by the Commission to be inconvenient.[3] Probably, the "realm of convenience" test was delineated for the protection of the employee  not the employer. The test insures employees against potential devious-minded, vindictive employers who may furnish the services of a physician who is not conveniently located.
And finally, whether Perez's treatment of Hernandez was "reasonable as required by the Act" is an issue not addressed by Petroleum in its brief. Petroleum had an affirmative duty to specifically address the issue and provide authoritative support for its position. Brown v. State, 534 So.2d 1019, 1023 (Miss. 1988); Shive v. State, 507 So.2d 898 (Miss. 1987); Read v. Southern Pine Elec. Power Ass'n, 515 So.2d 916 (Miss. 1987); Devereaux v. Devereaux, 493 So.2d 1310 (Miss. 1986); Pate v. State, 419 So.2d 1324 (Miss. 1982). In light of Petroleum's failure, this Court is "under no obligation to consider th[e issue]." Brown, 534 So.2d at 1023; see also Clark v. State, 503 So.2d 277 (Miss. 1987); Kelly v. State, 463 So.2d 1070 (Miss. 1985); Redmon v. State, 457 So.2d 1344 (Miss. 1984); Smith v. State, 430 So.2d 406 (Miss. 1983); Nelson v. Clanton, 263 So.2d 787 (Miss. 1972). Procedural bar aside, examination of the record reveals an absence of evidence supportive of Petroleum's contention. In addition, the Commission did not find Perez's treatment of Hernandez to be unwarranted, and without evidence to the contrary, this Court is without authority to reverse the order for payment of Perez's fees. See MISS. WORKER'S COMPENSATION GEN. R. 12; MISS. CODE ANN. § 71-3-15 (1972); V. DUNN, MISSISSIPPI WORKMEN'S COMPENSATION §§ 340-41 (1982) (These three sources deal with the Commission's authority to assess medical costs against an employer).
In sum, Rule 9 instills a right in an injured employee "to accept the services [of a physician] furnished by the employer or, in his [the employee's] discretion, to select a competent physician of his choosing." In the case sub judice, the record provides no indication that Petroleum offered to furnish Hernandez with a physician. This notwithstanding, the rule empowered Hernandez with the discretionary right to select *1024 her own competent physician  which she did. The evidence in the record provides reasonable uncontradicted support for her decision to secure Perez's services. This Court finds no violation of Rule 9 by Hernandez.
Admittedly, Rule 9 is constructed with broad terminology. This Court, however, should not fill in between the lines of the rule unless necessitated in order to avert a fundamentally unfair result. The Commission is advised to exercise its authority to clarify Rule 9. See MISS. WORKER'S COMPENSATION GEN. R. 2 ("The rules of the Commission are subject to amendment at any time, and the Commission will adopt additional rules whenever ... changes [or clarification] is advisable.").

III. CONCLUSION
Based on the foregoing analysis, the circuit court's decision is reversed, and the Commission's order is reinstated. Accordingly, the Commission's order is reiterated, in part:
[T]he defendants are liable for the medical, hospital, and related services and supplies resulting from treatment of the claimant by Drs. Herrington, Perez, Dewberry, Duncan, Mack, and DeCamp, and [Petroleum is] hereby order[ed] to honor and pay for the medical services of a competent neurosurgeon and/or orthopedic surgeon and a general practice or family physician located near the claimant's residence in the State of California and ... until such time as extensive, complicated and expensive diagnostic tests, such as myelograms, etc. are performed on the [Hernandez], it is impossible for any person to determine if the claimant has sustained any permanent impairment or permanent disability as a result of the September 15, 1982 injury.

(emphasis added).
Before concluding, an inconsistency in the Commission's finding must be clarified. Although the Commission called for institution of "diagnostic testing" necessary to determine whether a disability exists, it also dismissed Hernandez's claim for temporary and permanent compensation "with prejudice." Hernandez's claim for disability compensation should not have been dismissed "with prejudice". Hernandez is not estopped from relitigating the issues of disability and disability compensation; that is, upon performance of necessary diagnostic tests, she may present to the Commission additional evidence for support of her disability claim.
CIRCUIT COURT'S DECISION REVERSED; WORKERS' COMPENSATION COMMISSION'S ORDER REINSTATED; CAUSE REMANDED TO WORKERS' COMPENSATION COMMISSION FOR DETERMINATION OF DISABILITY ISSUE UPON COMPLETION OF DIAGNOSTIC TESTING.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] The first hearing was held on April 20, 1984, at the office of the Mississippi Workers' Compensation Commission in Jackson, Mississippi. The second hearing was held on August 3, 1984, at the Oschner Clinic in New Orleans, Louisiana. The last was held on September 11, 1984, at the Adams County Courthouse in Natchez, Mississippi.
[2] "Residences" refers to Hernandez's residence in Natchez, Mississippi (at the time of her accident) and Los Angeles, California (at the time she was treated by Dr. Perez).
[3] Hernandez's employment of Perez's services does not seem unusual. The record reveals she is of Latin American descent and, as noted in the text, Perez's office is arguably located near her Los Angeles residence.