## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 95-CA-00268-SCT

*ELEMETRIC BROWN*

*v.*

*THE HOUSTON SCHOOL DISTRICT; FRANK ALFORD, BETTY ATKINSON, JOE HARPER, BILL KLAUSER AND ROBIN MATHIS, MEMBERS OF THE SCHOOL BOARD OF TRUSTEES; BETTY HOLCOMBE AND LISA HESTER, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES; AND C. L. STEVENSON, SUPERINTENDENT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/95 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BARBARA LEE CLARK |
| ATTORNEY FOR APPELLEES: | REX F. SANDERSON |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | AFFIRMED - 12/18/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/12/98 |

**EN BANC.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

### SUMMARY

¶1. Elemetric Brown appeals a February 21, 1995, order of the Chickasaw County Circuit Court granting the Houston School District's motion for summary judgment in a wrongful death action, as well as for claims made pursuant to 42 U.S.C. § 1983 and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400. The circuit court found that her claims were barred by as a matter of law by sovereign immunity and qualified immunity. Brown has provided no basis for the federal claims raised, and her wrongful death claim is barred by sovereign immunity. Accordingly, we affirm the

decision of the Chickasaw County Circuit Court granting summary judgment to the Houston School District and its employees.

## STATEMENT OF THE FACTS

¶2. Eight-year-old Corey Lynn Jones ("Corey") was a special education student at the Houston Elementary School. Corey had a history of behavior problems which, although improved since he started kindergarten, continued to be addressed by his teachers.

¶3. On the morning of April 29, 1991, Corey was more "boisterous" in class than usual. His teacher, Lisa Hester ("Hester"), stated in her affidavit that he then started throwing things and threatened to hit Hester and take her glasses. As Hester was holding Corey's hands to keep him from hitting her, the acting principal, Betty Holcombe ("Holcombe"), came in to help. They took him to Holcombe's office, where he was paddled. Holcombe kept him in her office, as was her practice when he was upset.

¶4. While Corey was in the principal's office, Holcombe heard a car horn blowing and went to see what was wrong. Before going outside, she told him to stay in the chair where he was seated and asked the secretary to watch him. Moments later Holcombe went back inside, where she learned from the secretary that Corey had just snuck out of the office.

¶5. Teresa Oswalt ("Oswalt"), a teacher's assistant who was acquainted with Corey, saw him run out of the principal's office as she was walking down the hall to get supplies. She grabbed his arm, but he broke away, laughing and looking back to see if she was following him. She noted that Corey was very strong for his age and size and doubted that she could have caught up with him. Oswalt said that he ran down to the end of the hall and out the door to the south side of the building. She went on to the principal's office, where she advised Holcombe that Corey had gotten away from her. The day was very rainy and they immediately began looking for Corey, both inside and outside the building.

¶6. The search for Corey continued throughout the rest of the day and into the night. The next morning, Corey's body was found in a creek not far from the school. The record does not indicate any other circumstances surrounding the child's death.

¶7. Brown filed a complaint in the Chickasaw County Circuit Court on April 29, 1992, against the Houston Municipal Separate School District, members of its Board of Trustees and various District employees for the April 29, 1991, death of her son, Corey Lynn Jones. She sought damages for the wrongful death of the child as well as for emotional distress. Brown raised federal court claims pursuant to 42 U.S.C. § 1983, for violation of the child's civil rights, and 20 U.S.C. § 1400, et seq., for failure to meet his needs under the Individuals with Disabilities Education Act (IDEA). She further sought punitive damages.

¶8. In response to the state court claims, the District raised the defenses of sovereign immunity and qualified immunity on behalf of itself and the other defendants. As to the federal court claims, the District affirmatively stated that Corey Lynn Jones was properly placed in the Houston Elementary School and that the school was in compliance with the IDEA in providing for his education and instructional needs.

¶9. On February 21, 1995, after reviewing the pleadings, affidavits, discovery materials and briefs submitted by the parties in support of the various motions, the circuit court granted the District's motion for summary judgment. Specifically, the circuit court found that Brown's complaint contained "allegations of acts of the Defendants on April 1 [sic], 1991, at a time when Section § 11-46-1 et seq. of Mississippi Code of 1972 Annotated barred claims against the Houston School District." It further found that the complaint was barred by the defendants' qualified immunity and that the pleadings and discovery material showed no genuine issue of material fact. Accordingly, the circuit court granted the District's Motion to Dismiss or for Summary Judgment and its Supplemental Motion for Summary Judgment.

## DISCUSSION OF THE LAW

¶10. Brown construes the circuit court's order as finding that all of her claims, both state and federal, are barred by either sovereign immunity or qualified immunity. The District focuses on Brown's failure to appeal what it considers to be the circuit court's primary reason for granting summary judgment -- the finding that there was no genuine issue of material fact raised by the pleadings or the discovery materials filed with the court.

### A. The Wrongful Death Claim

¶11. Miss. Code Ann. § 11-46-1 et seq. provides legislative sovereign immunity to the State and its political subdivisions, including local school districts. *Richardson v. Rankin County School District*, 540 So. 2d 5, 8 (Miss. 1989). Thus, Brown's claim against the School District is barred by sovereign immunity. Apparently Brown concedes this point when she states in her brief that "[t]he plaintiff asserts that §46-46-1 et Seq (sic) of Mississippi Code of 1972 Annotated only immunizes the State and its political subdivisions as well as its employees, trustees, officers, or agents from liability and suit for torts and torts of employees." Additionally, we take this opportunity to reinforce our "prospective only" application of *Presley v. Mississippi State Highway Comm'n*, 608 So. 2d 1288 (Miss. 1992). In *Robinson v. Stewart*, 655 So. 2d. 866 (Miss. 1995), we held that *Presley* was to be applied prospectively only, announcing that "[w]hat we have stated indirectly we now say directly. *Presley has no retroactive application*." *Robinson*, 655 So. 2d at 868 (emphasis added). The incident giving rise to Elemetric Brown's wrongful death claim occurred prior to our decision in *Presley*, thereby making *Presley* inapplicable to the instant case. The Houston School District was under the protective umbrella of sovereign immunity, thereby ending our inquiry and making summary judgment appropriate.

¶12. As to her assertion that the circuit court erred in granting summary judgment on grounds of qualified immunity, Brown refers only to language in *Pruett v. City of Rosedale*, 421 So. 2d 1046, 1051-52 (Miss. 1982), which discusses the applicability of the reasonable man standard to governmental decision-making in the context of sovereign immunity. She provides absolutely no authority to support either side of the question she raises of whether qualified immunity should be extended to public school teachers. Absent any meaningful argument or citation of authority, this Court will not consider the assignment of error. *Smith v. Dorsey*, 599 So. 2d 529, 532 (Miss. 1992); *R.C. Petroleum, Inc. v. Hernandez*, 555 So. 2d 1017, 1023 (Miss. 1990).

### B. The § 1983 Action

¶13. 42 U.S.C. § 1983 (1994) provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Brown concedes that for a plaintiff to succeed in a § 1983 action, she must show the violation of a clearly established constitutional right under color of state law. She has not done so. Despite vague references to the Fourteenth Amendment of the United States Constitution, Brown has not shown any facts suggesting a violation of the child's substantive due process rights. Moreover, she has alleged no "special relationship" between the State and Corey arising from taking him into custody and holding him against his will as required by *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), so as to impose some duty for his safety and well-being. *DeShaney*, 489 U.S. at 199-200.

### C. The IDEA Claim

¶14. The Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., requires states, as a prerequisite to obtaining federal funding, to provide all disabled children with "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c) (1994). *Natchez-Adams School District v. Searing*, 918 F. Supp. 1028, 1030-31 (S.D. Miss. 1996). *See also W.B. v. Matula*, 67 F.3d 484, 499 (3d Cir. 1995). To determine whether the IDEA has been violated, the United States Supreme Court set forth a two-part test in *Board of Education of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed. 2d 690 (1982): "'First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?'" *Salley v. St. Tammany Parish School Board*, 57 F.3d 458, 466 (5th Cir. 1995) (*quoting Rowley*, 458 U.S. at 206-07, 102 S.Ct. at 3051). "The primary means of assuring that each disabled child is given a meaningful opportunity to benefit educationally under the IDEA is the 'individualized education program' or IEP." *Searing*, 918 F. Supp. at 1031.

¶15. The record contains copies of the IEPs developed for Corey while he was a student at Houston Elementary School. They indicate that Brown approved of his placement in the special education program, that she agreed with the program developed for her son, and that the child was meeting the goals set for him. Further, the record indicates that Brown had met with Corey's teachers only three days before he died to discuss his progress. While the IDEA "'confers upon disabled students an enforceable substantive right to public education in participating States . . . ,'" there simply are no facts in the record to support an IDEA claim. *W.B.*, 67 F.3d at 499 (*quoting Honig v. Doe*, 484 U.S. 305, 310, 108 S.Ct. 592, 98 L.Ed. 2d 686 (1988)).

¶16. To overcome the defense of qualified immunity in an IDEA claim, "a plaintiff must show more than that he or she was denied a free, appropriate public education in a general sense; rather, a plaintiff must demonstrate 'that the particular actions taken by defendants were impermissible under law established at that time.'" *W.B. v. Matula*, 67 F.3d 484, 499-500 (3d Cir. 1995) (*quoting P.C. v.*

*McLaughlin*, 913 F.2d 1033, 1040 (2d Cir. 1990)). Brown has presented no evidence that her child was denied a free, appropriate public education in *any* sense.

## CONCLUSION

¶17. Looking as we must at the evidence in a light most favorable to Brown, the non-moving party, summary judgment was appropriate in this case. Brown's wrongful death claim is barred by sovereign immunity, and Brown has provided no factual basis for the § 1983 or IDEA claims. We therefore affirm the circuit court's grant of summary judgment.

¶18. **AFFIRMED.**

**PRATHER, P.J., PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. BANKS, J., DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. McRAE, J., JOINS THIS OPINION IN PART.**

### McRAE, JUSTICE, DISSENTING:

¶19. This Court's recent decisions on sovereign immunity have pushed us back to the common law as it existed prior to *Pruett v. City of Rosedale*, 421 So. 2d 1046 (1982), denying the citizens of our State the opportunity to seek redress from wrongs committed against them by public entities, contrary to the provisions of art. 3, § 24 of the Mississippi Constitution. I therefore disagree with the majority's finding that Brown's wrongful death claim against the School District and its employees is barred by sovereign immunity. Further, Brown's affidavits raise questions of material fact as to whether District employees were negligent in allowing the child to escape from the school building. Summary judgment, therefore, was not appropriate. Accordingly, I dissent.

¶20. Miss. Code Ann. § 11-46-1 et seq. provides legislative sovereign immunity to the State and its political subdivisions, including local school districts. *Richardson v. Rankin County School District,* 540 So. 2d 5, 8 (Miss. 1989). However, in *Presley v. Mississippi State Highway Commission,* 608 So. 2d 1288, 1294-1296 (Miss. 1992), a plurality of this Court found that § 11-46-6 of the Sovereign Immunity Act was unconstitutional and remanded the case for further proceedings. The same language found unconstitutional in *Presley* was still in effect at the time of Corey Brown's death in April, 1991. *See Presley*, 608 So. 2d at 1294 n. 6. Thus, Brown's claim against the School District is not barred by sovereign immunity.

¶21. Although the majority opinion states that Brown is procedurally barred from raising the issue of qualified immunity, it concludes that the wrongful death claims against the school officials and teachers, like those against the Board, are barred by sovereign immunity. However, sovereign immunity is not available to them and is not applicable to the facts of the case *sub judice.* As this Court explained in *Womble v. Singing River Hospital,* 618 So. 2d 1252 (Miss. 1993), "[c]ommon law qualified immunity has traditionally sought to protect the discretion of public officials so that

those officials would not be deterred by the threat of suit from making decisions and formulating policies that are in the public good." *Womble,* 618 So. 2d at 1263. The Court further found that day to day decisions regarding medical treatment were not inherently governmental and did not involve the formulation or implementation of public policy and therefore, should be judged "on the same standards as if made by private providers." *Id.* at 1263, 1265. *See also T.M. v. Noblitt,* 650 So. 2d 1340, 1346 (Miss. 1995) (Banks, J., concurring) ("the teaching of *Womble* is that qualified immunity applies to governmental 'policy-making' activity, not to general administrative or executive activity by one who happens to be a governmental [sic] employee."). Revisiting decisions by this Court as well as from other jurisdictions, the *Womble* court determined that medical personnel in public hospitals were not entitled to blanket qualified immunity; rather, "[d]ecisions made by medical personnel engaged in public service will continue to be protected to the extent that they involve the formulation and implementation of public policy." *Id.* at 1265. By the same token, the issue of whether Corey was adequately supervised by school personnel at the time of his disappearance does not raise any questions about decisions that were either inherently governmental in nature or involved either the formulation or implementation of public policy. Qualified immunity, therefore, is not available as a defense.

¶22. Brown stated in her affidavit that she and her father, Robert Jones, were told that Corey was allowed to leave the school building when he became upset and that he would go out in the playground to "cool off." School officials and Corey's teachers deny that such a practice existed and assert that the child ran off before they could catch him. We have stated that "the school is not an insurer of the safety of pupils, but has the duty as variously described, of exercising ordinary care, of reasonable prudence, or of acting as a reasonable person would act under similar circumstances." *Levandoski v. Jackson County School District,* 328 So. 2d 339, 342 (Miss. 1976). Given Corey's developmental disabilities and his history of behavioral problems, a jury question exists as to whether his teachers and school officials exercised the requisite care in supervising and controlling him. "All motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion." *Daniels v. GNB, Inc.*, 629 So.2d 595, 599 (Miss. 1993). In this case, I would find that the circuit court should have erred on the side of denying the motion by the School District and its employees for summary judgment.

¶23. After all the years of delay by the legislature, which had somewhat attempted to provide a small window in which persons injured by the negligence of government employees could seek redress, the majority now slams the window shut. I would not. Brown's wrongful death claim against the School District and its employees was not barred by sovereign immunity and there were questions of fact to be resolved by a jury. Accordingly, I dissent.

### BANKS, JUSTICE, DISSENTING IN PART:

¶24. While I agree that the summary judgment granted in this case should be affirmed as to the federal claims and as to the school district, trustees and superintendent on state claims under the doctrine of sovereign and qualified immunity, I do not agree that qualified immunity applies to the action of the defendants Holcombe and Hester, and the order granting summary judgment should therefore be reversed as to those two defendants.

¶25. As this Court explained in *Womble v. Singing River Hospital,* 618 So. 2d 1252 (Miss. 1993),

"[c]ommon law qualified immunity has traditionally sought to protect the discretion of public officials so that those officials would not be deterred by the threat of suit from making decisions and formulating policies that are in the public good." ***Womble,*** 618 So. 2d at 1263. The Court further found that day to day decisions regarding medical treatment were not inherently governmental and did not involve the formulation or implementation of public policy and therefore, should be judged "on the same standards as if made by private providers." ***Id.*** at 1265. *See also* ***T.M. v. Noblitt,*** 650 So. 2d 1340, 1346 (Miss. 1995) (Banks, J., concurring) ("the teaching of ***Womble*** is that qualified immunity applies to governmental "policy-making" activity, not to general administrative or executive activity by one who happens to be a governmental [sic] employee"). Revisiting decisions by this Court, as well as from other jurisdictions, the ***Womble*** court determined that medical personnel in public hospitals were not entitled to blanket qualified immunity; rather, "[d]ecisions made by medical personnel engaged in public service will continue to be protected to the extent that they involve the formulation and implementation of public policy." ***Id.*** at 1265. By the same token, the issue of whether Corey was adequately supervised by school personnel at the time of his disappearance does not raise any questions about decisions that were either inherently governmental in nature or that involved either the formulation or implementation of public policy. Qualified immunity, therefore, is not available as a defense.

¶26. Brown and school officials provide differing accounts of the supervision Corey received. In ***Levandoski v. Jackson County School District,*** 328 So. 2d 339 (Miss. 1976), this Court found that there was an insufficient causal relationship between the teacher's and school officials' alleged failure to supervise and a student's disappearance from school, where the student was found floating in the Tchouticabouffa River with a knife wound in her back. As such, this court affirmed the circuit court's dismissal of the case. ***Id.*** at 342. The ***Levandoski*** Court stated that "the school is not an insurer of the safety of pupils, but has the duty as variously described, of exercising ordinary care, of reasonable prudence, or of acting as a reasonable person would act under similar circumstances." ***Id.*** (*quoting* Allan Korpela, Tort Liability of Public Schools and Institutions of Higher Learning for Injuries Resulting from Lack or Insufficiency of Supervision, 38 A.L.R. 3d 830, 834 (1971)).

¶27. A motion for summary judgment should be granted only where there is no genuine issue of material fact. In reviewing the grant or denial of summary judgment, this Court determines only whether there are issues to be tried. ***Brown v. Credit Center, Inc***., 444 So. 2d 358, 362 (Miss. 1983). In making this determination, this Court conducts a *de novo* review. ***Mantachie Natural Gas Dist. v. Mississippi Valley Gas Co.***, 594 So. 2d 1170, 1172 (Miss. 1992). "All motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion." ***Daniels v. GNB, Inc.***, 629 So. 2d 595, 599 (Miss. 1993) (*quoting* ***Mink v. Andrew Jackson Casualty Ins. Co.***, 537 So. 2d 431, 433 (Miss. 1988)). We review all the evidentiary matters in a light most favorable to the nonmoving party, and if, in this view, the moving party is entitled to judgment as a matter of law, summary judgment in his favor is appropriate. ***Clark v. Moore Memorial United Methodist Church***, 538 So. 2d 760, 762 (Miss. 1989).

¶28. Therefore, giving Mrs. Brown every benefit of the doubt, and looking, as we must, at the evidence in a light most favorable to her, I find that there is sufficient evidence to raise questions of whether Corey received adequate supervision from school personnel on the scene and if school officials Holcombe and Hester acted reasonably in attempting to stop his flight from the school.

**SULLIVAN, P.J., JOINS THIS OPINION. McRAE, J., JOINS IN PART.**