SOUTHWICK, J„
for the Court.
¶ 1. The Mississippi Workers’ Compensation Commission ordered that Hugh Barnes be reimbursed for travel expenses he incurred while traveling between a temporary residence in Kansas to his doctor’s office in Hattiesburg. We find the Commission applied the wrong legal standard and therefore reverse and remand for further proceedings.
FACTS
¶2. In June 1997, Hugh Barnes sustained an on-the-job injury while in the employ of W.S. Newell, Inc. Under the procedures for determining workers’ compensation benefits, Barnes’s injury was found to have caused the total loss of use of his left leg. Barnes was entitled to reasonable medical treatment. Barnes moved to Louisiana, which became his place of residence. In 2004, Barnes moved temporarily to Fort Riley, Kansas. There he assisted with the care of his grandchildren because his daughter and son-in-law were on military duty there. His son-in-law was later deployed to Iraq.
¶ 3. In August 2004, Barnes filed a motion to compel payment for mileage expenses he incurred in traveling from Kansas to Hattiesburg so that he could receive continuing treatment for the same injury from his orthopedist, Keith Melancon, M.D. This trip required round-trip travel of 1,874 miles. The Commission had previously ordered that Barnes receive payment for his mileage to Hattiesburg when he moved his residence to north Louisiana.
¶4. In August 2004, an administrative judge ordered payment of the Kansas-Mississippi travel expense. As we will explain, we interpret the order as having found justification only for two trips. The Commission affirmed. The Wayne County Circuit Court reversed in July 2005. The court held that the travel expense was *825 unreasonable since similar treatment was available in Kansas. Barnes’s next level appeal has been deflected to this Court.
DISCUSSION
¶ 5. We defer to the decision of the Commission on factual issues. Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461 (Miss.2005). A decision is supported by substantial and sufficient evidence when it is not “clearly erroneous and contrary to the overwhelming weight of the evidence.” Id. Questions of law are reviewed de novo. ABC Mfg. Corp. v. Doyle, 749 So.2d 43, 45 (Miss.1999).
¶ 6. Barnes argues that the circuit court applied the wrong standard of review in its reversal of the Commission’s decision. He also argues that the decision contained errors of law and that the court simply substituted its judgment for that of the Commission. Despite these arguments, our review will not focus on the circuit court’s opinion. Instead, the operative ruling in which error must be shown is that of'the Commission itself. Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991). We respect and consider the reasoning applied by the circuit court. Still, each level of judicial review evaluates whether the Commission’s order was arbitrary or capricious, whether it is supported by substantial evidence, whether it was within the Commission’s authority, and whether it complies with the operative statutes without violating constitutional rights. UCCCR 5.03. There is a wide range of discretion inherent in workers’ compensation decisions. It is the exercise of discretion by the Commission that receives deference at every stage of judicial review.
¶ 7. One of the initial questions is whether Barnes’s residence for purposes of payment of travel expenses was in Kansas. The administrative order adopted by the Commission refers to Barnes’s “residence in Kansas.” The trial court discussed the uncertainty of duration of “the change in residence” to Kansas. The employer and carrier accept that the current residence of Barnes is in Kansas. Since the parties do not dispute the point, we will not analyze whether a temporary move to a distant state will cause the new location to be considered the claimant’s residence.
¶ 8. How much travel reimbursement has been authorized by the Commission is our next preliminary consideration. The order of the administrative judge, adopted by the Commission, found the expectation was that Barnes’s move to Kansas was temporary, and that “due to the temporary nature of his residence in Kansas, if it is expected [Barnes’] stay there will be longer, I would expect the Employer to re-urge their motion and we would look at this again in one year.” Based upon the language in the order, the mileage from Kansas to Hattiesburg was only authorized as reasonable for one year. The order referred to a need for two trips to see Dr. Melancon in that one year period.
¶ 9. The Commission has the authority to adopt procedural rules. Miss. Code Ann. § 71-3-85(3) (Rev.2000). Language from one of the authorized rules is central to the parties’ arguments:
The employer shall select competent physicians ... and immediately furnish such services, including all emergency services, to the injured employee. The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select one (1) competent physician.... Such physician(s) selected by the employer or the employee, including any authorized referral, shall be located in an area reasonably convenient to the place of injury or the residence of the injured employee, *826 and the medical services shall be reasonably suited to the nature of the injury.
Miss. Workers’ Comp. Comm’n Gen. R. 9. This is just a brief excerpt from a much longer rule.
¶ 10. The Commission adopted the administrative judge’s order requiring transportation costs from Kansas to be paid for treatment in Mississippi because “the Claimant has satisfied provisions of General Rule 9 as Hattiesburg is reasonably convenient to the place of injury.” (Emphasis in order). The same order referred to Barnes as being a resident of Kansas. The most logical interpretation of the Commission decision is that if an otherwise acceptable physician was near either the place of injury or place of residence, the employer must pay for that physician and for the travel expenses that treatment entailed. Transportation costs incurred by a claimant to receive treatment are reimbursable under the Commission’s General Rule 14. Miss. Workers’ Comp. Comm’n Gen. Rule 14 (citing Miss.Code Ann. § 25-3-41 (Supp.2005)). Section 25-3-41 is a general travel statute authorizing payment for “each mile actually and necessarily traveled.”
¶ 11. The circuit court reversed because it found that the Hattiesburg doctor was not reasonably convenient to Barnes’s residence in Kansas. The court reasoned that what really was involved was not convenience but the preference of Barnes to keep his doctor in Hattiesburg. It was not reasonably convenient for the Barnes to travel over 1,800 miles to visit his Hattiesburg doctor when he could receive similar competent treatment in Kansas. The court supported its decision to reverse on General Rule 9 and two Mississippi Supreme Court opinions.
¶ 12. We have already quoted the operative language from the Rule, which concerns selecting physicians that are near the place of injury or the claimant’s residence. One of the precedents relied upon by the circuit court involved an employee injured in Mississippi but who established a new residence in Los Angeles and sought medical treatment near that home. R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1019 (Miss.1990). The court upheld the Commission order that allowed Hernandez, once she moved to Los Angeles, to be treated by her physician in Tijuana, Mexico since a suitable physician in Natchez could not be found. Id. at 1024. The court stated that once the competence of a selected physician has been established,
the focus should then turn, if necessary, to the issue of reasonableness of employing a physician allegedly located outside the “realm of convenience.” The boundaries of the “realm of convenience” can only be determined on a case-by-case basis. For example, the Commission may conclude in one case that the boundary reasonably extended over seven hundred miles to Charleston, South Carolina, where a renowned hospital specializing in treatment of burn victims is located. In another case, the Commission may find that a competent specialist could have been located in Mississippi and, therefore, the boundary line should not have extended beyond the State’s border.
Id. at 1023. The realm of convenience test was met because “the Commission found that Hernandez was unable to obtain an appointment to be examined by a competent physician in Natchez, Mississippi.” Id. The convenience test was “probably ... delineated for the protection of the employee — not the employer.” Id. That purpose protects against employers who may furnish services from an inconveniently located physician. Id. The Supreme Court’s preliminary view that “convenience” was solely for the employee’s pro *827 tection might be affected by facts such as are presented to this Court today. We do not resolve this appeal based on that point, though.
¶ IB. Once Hernandez established a new residence in southern California, a doctor close to the border in Mexico provided care. What appeared to be the more significant issue was whether it was appropriate for a claimant to select a physician not credentialed in the United States. Id. at 1022-23. The analogous situation for Barnes is if he had chosen a doctor in the vicinity of Fort Riley and the employer refused to pay, saying that he should continue to be treated in Hatties-burg.
¶ 14. In the other decision relied upon by the circuit court, it was found to be unreasonable for an employer to require treatment from a doctor located 100 miles away from the claimant’s residence. Brogdon v. Link-Belt Co., 298 So.2d 697, 698 (Miss.1974). The distance was not reasonable because there “was no proof that satisfactory treatment could not be afforded appellant in the area near his residence.” Id. Here too, the case is better support for the proposition that Barnes should find treatment near his present residence in Kansas. Brogdon at least means, but perhaps only means, that the employer could not have insisted that Barnes travel 1800 miles for treatment.
¶ 15. The parties accept that if Barnes had permanently moved to Kansas, then he would have been required to obtain treatment from a physician local to his new residence. That concession is inconsistent with the order adopted by the Commission, since the holding appears to have been that a physician convenient either to the claimant’s residence — which can change — or the fixed place of injury could be insisted upon by a claimant because Commission General Rule 9 establishes a choice. However, the same order emphasized that the distant residence was temporary. Should the residence become longer-lasting, then a different analysis might apply. If convenience to place of injury is a sufficient basis to permit selection of a physician, then the temporary nature of the claimant’s distance from the place of injury should not matter. We find the Commission’s interpretation of the options under Rule 9 to be unclear.
¶ 16. Barnes elected to receive treatment at an inconvenient location, at least in any of the usual meanings of convenience. Visiting Dr. Melancon in Hatties-burg was inconvenient but preferred. Dr. Melancon’s deposition makes clear that benefits to Barnes in being treated in Hat-tiesburg were less medical than personal.
¶ 17. The concept of reasonableness is found in Commission General Rule 9 in two different situations. A treating physician must be “reasonably convenient” to the place of injury or residence of the injured party. There is no evidence that adequate medical treatment could not be obtained near Barnes’s residence in Kansas. The examples given in Hernandez of a “case-by-case” determination of convenience are inconsistent with the result reached by the Commission: “the Commission may conclude in one case that the boundary reasonably extended over seven hundred miles to Charleston, South Carolina, where a renowned hospital specializing in treatment of burn victims is located.” Hernandez, 555 So.2d at 1023. The only evidence here is that there was no unique expertise in Dr. Melancon’s treatment. The other example was “the Commission may find that a competent specialist could have been located in Mississippi and, therefore, the boundary line should not have extended beyond the State’s border.” Id. That example supports requiring Barnes to use competent physicians who *828 would have been available in Kansas. The two examples in Hernandez are not meant to be exclusive, but they are instructive on meaning. We find that 1,800 miles is not within the realm of convenience as interpreted in Hernandez.
¶ 18. However, Rule 9 applies reasonableness in another context: “medical services shall be reasonably suited to the nature of the injury.” Miss. Workers’ Comp. Comm’n Gen. R. 9. This means that the treatment must be “reasonable and necessary.” John R. Bradley & Linda A. Thompson, Mississippi WORKER’S Compensation, § 5:70 (Thomson-West 2006). This “reasonable and necessary” standard is reflected in the official fee schedule. Id. (citing Miss. Workers’ Comp. Medical Fee Schedule 3 (Medical Cost Containment Rules, § 1(A)(1), General Provisions) (2002)). This standard for medical treatment has long been applied in Mississippi caselaw. See Barber Seafood, 911 So.2d at 462 (affirming the Commission’s finding that a surgical procedure was not reasonable and necessary); Central Elec. & Machinery Co. v. Shelton, 220 So.2d 320, 325 (Miss.1969) (employer was liable for “reasonable and necessary” medical treatment).
¶ 19. We have rejected that the Kansas to Mississippi travel is reasonably convenient as meant by Hernandez and Rule 9. What is an issue, though, is whether there was a medically reasonable and necessary basis for Barnes to obtain his treatment in Hattiesburg instead of in Kansas. What is clear from the record is that Barnes was not receiving specialized treatment that would only be available through Dr. Me-lancon or in Hattiesburg. The treatment involved Barnes receiving three shots in his knee over the course of a two-week period. Barnes would return to the doctor’s office three months after receiving the shots for a follow up, and the next treatment would be scheduled to take place three more months from the date of the follow up. This series of shots would be required twice per year. Dr. Melancon testified that the follow up for these treatments could be done over the phone if there were no problems with the treatment.
¶20. The record does not contain any evidence revealing what would be required for Barnes to obtain a physician to provide this treatment in Kansas. Dr. Melancon testified in his deposition that “there are certainly qualified orthopedic surgeons” where Barnes resided in Kansas. Still, Dr. Melancon was of the opinion that it was better for Barnes to return to Hatties-burg because of the length of their physician-patient relationship and the temporary nature of the Kansas residence.
¶21. There is little evidence that Barnes would medically benefit from continuing his treatment in Hattiesburg versus treatment in Kansas. The continued treatment in Hattiesburg may have been justified if, for example, a Kansas ortho-paedic surgeon would need to spend an inordinate number of hours examining Barnes’s medical records and conducting examinations before providing competent care. It is possible that there are other medical reasons for Barnes to continue his visits to Hattiesburg but we find little explanation in the record. There is no testimony that Barnes or Dr. Melancon even inquired about the necessary time and expense to transfer treatment. Patient preference alone does not meet the reasonable and necessary standard.
¶ 22. There is substantial discretion to be exercised in this administrative agency decision. We find that the Commission applied an incorrect legal standard in its analysis of the Supreme Court’s reasonably convenient standard found in Hernandez. We reverse the circuit court since it *829 rendered judgment denying reimbursement. It may be possible to sustain the Hattiesburg treatment on the basis of what was medically necessary and reasonable. We remand to the Commission for such further proceedings as it deems appropriate consistent with this opinion.
¶ 23. THE JUDGMENT OF THE WAYNE COUNTY CIRCUIT COURT IS REVERSED, THE ORDER OF THE WORKERS’ COMPENSATION COMMISSION IS SET ASIDE, AND THIS MATTER IS REMANDED TO THE COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.