396 So.2d 7 (1981)
MID-SOUTH INSULATION COMPANY and Fireman's Fund Insurance Company
v.
Dependents of Casey BUCKLEY, Deceased.
No. 52403.
Supreme Court of Mississippi.
March 25, 1981.
*8 Michael L. Knapp and Gary Jones, Daniel, Coker, Horton, Bell & Dukes, Jackson, for appellants.
Dan McCullen, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellee.
Before ROBERTSON, P.J., and BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
This appeal involves death benefits under the Mississippi Workmen's Compensation Act sought by the widow of Casey Buckley, deceased. He died on September 26, 1975, primarily as the result of lung cancer precipitated and caused by breathing asbestos during the course of his employment. The paramount question in the appeal is whether or not appellant-carrier, Fireman's Fund Insurance Company, the workmen's compensation carrier for the deceased's employer Mid-South Insulation Company, during a part of the period of exposure to asbestos, is obligated to pay workmen's compensation benefits to the widow.
We first should place in mind certain dates. Casey Buckley began working for appellant Mid-South Insulation in 1957. Prior to that date, he had worked for various insulation companies since 1938. He worked regularly and solely for Mid-South from 1957 until August 1967, when his health condition required a complete stoppage of insulation work. From that time, until his health and bodily infirmities led to his death, he did odd jobs such as selling used cars.
From 1957, when Buckley began employment with Mid-South until March 30, 1967, the workmen's compensation carrier was appellant, Fireman's Fund Insurance Company. From March 30, 1967, until Buckley was forced to stop working in August 1967, the workmen's compensation carrier was Employer's Mutual Insurance Company of Wisconsin. The primary question is which of these companies has the obligation of paying all or part of the workmen's compensation benefits undisputedly owed Buckley's widow?
The evidence heard by the administrative judge and included in the appellate record practically is undisputed. A discussion of that evidence is necessary before considering the law applicable thereto. The first witness was the claimant and widow, Mrs. Evelyn Ellis Buckley. She and Mr. Buckley were married in August 1929, and lived together continuously until her husband's death. She related the history of her husband's employment with Mid-South during the ten-year period in question. She described his appearance when he would return home from work, stating that he would have white dust all over his clothes and face; that this situation existed every day, as he worked with asbestos every day. She testified that in the early 1960's he started developing respiratory problems and breathing difficulty. He had developed shortness of breath and a lot of congestion in his chest and lungs. He did a lot of coughing. He started losing weight. The condition got no better and he was seen various times by physicians in Jasper County, the home of the deceased and his wife. He began to lose his strength and endurance. He would have extreme difficulty breathing and sleeping at night and would have to use items such as hard candy and cough drops to be able to sleep. Mrs. Buckley had not noticed her husband's complaints until the early 1960's. They both thought that during those years he was developing a severe case of bronchitis.
Witness James Vernon Baker testified that he had been an asbestos insulation worker since 1954. He had worked for long periods of time with the deceased. He described *9 the working activities around asbestos and how the workers breathed it continuously, with it filling their noses and throats. They would continually have to be blowing their noses and coughing.
The records of the University Medical Center were introduced in evidence concerning the treatment of the deceased during his terminal illness. These records were interpreted by witness Dr. James D. Hardy, who had been head of the Surgery Department at the University Medical Center for twenty-two years. The first of 1975 he began examination and treatment of Buckley for what obviously was a lung condition that could not be diagnosed at that time. He testified that Buckley was becoming increasingly short of breath and that the situation became so bad that he determined to recommend an operation to open the chest to try and diagnose the disease. This was done and Dr. Hardy found "a widespread lumpiness of his lung and a lot of whitish-looking scarring on the pleural surface, that is the lining outside the lung and we sent lots of this material over there [to the laboratory] thinking for sure it was cancer, but actually they did not see cancer but they saw asbestos bodies." This operation was on June 23, 1975. Afterwards Buckley got no better and nothing attempted to be done for him was successful. He kept going down until his death, as stated. In a report to Mrs. Buckley, Dr. Hardy stated that Buckley had "severe and extensive lung disease, in addition to his malignant tumor and that this was related to exposure to asbestos dust." In answer to a hypothetical question involving Buckley's exposure over the years, heretofore set out, to asbestos dust and the history as previously related by Mrs. Buckley, Dr. Hardy stated "I believe if he was exposed to dust over that period, yes, I assume it would have an effect on him." When asked about the causal relationship between the asbestosis and resulting death, and whether or not the asbestosis was a contributing factor to the death, Dr. Hardy stated, "I think it had a great deal to do. In fact, it was the cause of his demise." Dr. Hardy testified that once asbestos was breathed into a person's lungs, it tended to stay there and that it took "a long time, a good long time" for it to cause its maximum effects.
Appellants presented only one witness, Dr. Jon Michael Beall, who practices internal medicine in Jackson. He had never seen the deceased, but had seen and examined the medical records. He was first shown an x-ray report that was introduced in evidence by appellants. This was a report dated July 27, 1966, from the Jasper General Hospital, interpreting an x-ray taken of Buckley while a patient. The x-ray according to the report showed "interlobar pleural thickening on the right between the middle and lower lobes. There is a moderate amount of fibrosis in both lungs and there are a few scattered calcifications." The x-rays were introduced into evidence.
Dr. Beall was asked a lengthy hypothetical question that included testimony hereinbefore related and a more detailed history of Buckley's work around asbestos most of his adult life. Dr. Beall was then asked whether or not, based on that question and the x-rays and reports introduced in evidence, he had an opinion as to "when Mr. Buckley had asbestosis?" His answer was "on the basis of the information that we have available, I think that the clinical diagnosis of asbestosis could have been made, at least by this x-ray, in July of 1966." Dr. Beall then described the findings on the 1966 x-ray, although misinterpreted by the local doctors, that were compatible with a lung condition caused by asbestos. The doctor definitely made a clinical diagnosis of asbestosis present in Buckley's body in July 1966, and in his opinion Buckley had asbestosis at that time.
Originally claims were filed against the employer and both carriers. A non-suit was taken and a settlement effected between the claimant and Employers Mutual Insurance Company of Wisconsin, who as stated, was the carrier from March through August 1967. The administrative judge, on motion of the claimant, refused to admit or consider details of this settlement, which reserved all rights against the appellants here.
*10 The administrative judge found that from 1957 to March 30, 1967, the deceased was subjected to cumulative and repeated trauma from the inhalation of asbestos particles which resulted in asbestosis and his later death. He ordered payment of statutory compensation to the claimant by appellants.
On appeal to the full commission, the order of the administrative judge was reversed by two of the commissioners. This order found that although Buckley was exposed to asbestos for many years prior to August 1, 1967, his "disability" only started on that date, and that the carrier who had the coverage on this "disability" date, was the sole carrier responsible for compensation payments. The commission based its order primarily on the case of Singer Company v. Smith, 362 So.2d 590 (Miss. 1978), stating that "the Supreme Court emphasized its prior ruling that where occupational disease is involved, the carrier which provides coverage at the time the disability manifests itself is liable for the payment of benefits."
On appeal to the circuit court, whose statutory duty required it to review all questions of law and fact, the order of the commission was reversed and the order of the administrative judge reinstated.
In our opinion, the final judgment of the Circuit Court of the First Judicial District of Hinds County is correct and should be affirmed. With deference, the Workmen's Compensation Commission erroneously interpreted Singer, supra, as that opinion applies to the undisputed evidence in the case sub judice.
In Singer, the employee had been working for many years for Consolidated Furniture Industries, a division of Magnavox. His job was to operate a woodworking machine. Several months prior to September 1972, the plant began using a foreign wood named abiruana. It developed that the dust from this wood is highly dangerous and causes chronic pulmonary obstruction and disease. In September 1972 Smith was ill and did not work for approximately two weeks. There was no diagnosis of his condition that any way involved the foreign wood dust. Smith continued working until and after the ownership of the furniture factory changed on March 16, 1973, when Magnavox sold the factory to the Singer Company. Prior to the sale the workmen's compensation carrier was Travelers Insurance Company. Subsequent to the sale the carrier for Singer was Liberty Mutual Insurance Company. Smith worked for Singer until April, 11, 1973, when his physical condition had deteriorated to such an extent that he was forced to stop working and his physical trouble after that time was diagnosed as being caused by the foreign wood abiruana dust. The question then was, which employer and which carrier was obligated to pay Smith workmen's compensation benefits? The administrative judge, from the medical evidence presented, found that Smith was suffering from the poisonous dust in September 1972, when he was having his physical difficulties and contracted chronic lung disease at that time; even though, it was not medically determined then. It was held that nevertheless Smith's "disability manifested itself at that time and that workmen's compensation benefits were ordered solely by Magnavox and its carrier, The Travelers Insurance Company." The administrative judge held for the Singer Company and Liberty Mutual Company and they were dismissed. On appeal to the full commission, this finding was affirmed. The circuit court on appeal reversed the commission and held that Magnavox and Travelers were obligated for compensation benefits until the change of ownership (March 16, 1973), and that Singer and Liberty Mutual were obligated to pay benefits incurred after the date ownership of the plant was changed.
This court in Singer reversed the circuit court on the issue being discussed and reinstated the order of the commission finding only Magnavox and Travelers responsible for compensation benefits. We discussed the question of "apportionment of damages" between successive carriers, reaffirming that this principle cannot apply under our statutes except in the case of pre-existing *11 handicap or disease. We should bear in mind that in the present case, we do not have a situation as in Singer; that is, two successive employers, as well as carriers. We have the same employer the entire time who undisputedly was responsible for all of the claimant's benefits, leaving a decision only as to the change of carriers four months prior to Buckley's having to stop work entirely.
The compensation commission in the present case, in its discussion of Singer tied its opinion to a finding that the disability "manifested" itself on August 1, 1967, the last day of Buckley's employment and during the time Employers Mutual of Wisconsin was the carrier. It is true that in Singer, the Court also directed itself to the date the disability had "manifested" itself, which was September 1972, during the ownership of Magnavox.
The crux of the commission's error is that the undisputed proof, of both appellants and appellee was that the asbestosis in regard to Buckley manifested itself in the early 1960's and according to appellants' own witness definitely did so manifest itself on July 27, 1966, at the time of the hospitalization and x-ray in Jasper General Hospital.
In comparing Singer and the case sub judice, we find similar situations. When the finding was made that Smith in Singer manifested his disability in September 1972, there was absolutely no thought that he was suffering from the foreign wood dust. This was diagnosed only after he stopped work entirely several weeks after Singer became the owner of the plant and Liberty Mutual became the compensation carrier. Likewise, it is the undisputed proof in the present case that Buckley's disability and disease manifested itself in the early 1960's and especially in 1966. Likewise, the cause of this disability manifestation was not determined until after the end of Buckley's employment.
In Singer we state that we would not reach the "last injurious exposure rule," saying, "in the absence of difficulty in locating a definite and certain time, the rule has no application." In the case sub judice and in Singer, we have almost identical proof "locating a definite and certain time." Singer, therefore, is authority for the decision necessary to be rendered here.
We have carefully considered all of the assignments of error and in view of the above findings have concluded there is no merit to them. It follows that the final judgment of the Circuit Court of the First Judicial District of Hinds County should be and it is affirmed. The cause is affirmed and remanded to the Workmen's Compensation Commission for further proceedings consistent with this opinion.
AFFIRMED AND REMANDED TO THE COMMISSION.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and HAWKINS, JJ., concur.