# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-CC-01170 COA

**J. H. MOON & SONS, INC. AND WESTERN CASUALTY AND SURETY CO. APPELLANTS**

**v.**

**BILLY D. JOHNSON**                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/97 |
| TRIAL JUDGE: | HON. JOHN B. TONEY |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | BETTY B. ARINDER |
| ATTORNEYS FOR APPELLEE: | CHAD J. HAMMONS |
| | ROBERT L. WELLS |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| TRIAL COURT DISPOSITION: | REVERSED THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION'S AWARD AND GRANTED COMPENSATION BASED UPON PLAINTIFF'S AVERAGE WEEKLY WAGE IN 1993 |
| DISPOSITION: | AFFIRMED - 01/26/99 |
| MOTION FOR REHEARING FILED: | 2/9/99 |
| CERTIORARI FILED: | 5/4/99 |
| MANDATE ISSUED: | |

EN BANC

THOMAS, P.J., FOR THE COURT:

¶1. J.H. Moon and Sons, Inc. and Western Casualty and Surety Company appeal the decision of the Circuit Court of Madison County reversing the Mississippi Workers' Compensation Commission's award of compensation based on claimant's average weekly wage in 1981, the date of claimant's work related accident. The Circuit Court of Madison County awarded the claimant, Billy D. Johnson, compensation benefits based upon his average weekly wage rate in 1993, the date of his permanent disability. From this ruling, Moon and Sons assigns the following issues for review:

**I. THE FULL COMMISSION'S FINDING THAT THE DATE OF THE ORIGINAL INJURY IS THAT WHICH SHOULD BE USED IN CALCULATING THE CLAIMANT'S COMPENSATION BENEFITS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE;**

**THEREFORE, THE REVERSAL BY THE CIRCUIT COURT OF MADISON COUNTY, WAS ERRONEOUS.**

**II. THE FINDINGS BY THE CIRCUIT COURT OF MADISON COUNTY ESTABLISHED A NEW DATE OF INJURY AND LIBERTY MUTUAL INSURANCE COMPANY, THE CARRIER, ON THIS DATE IN 1993 SHOULD BE RESPONSIBLE.**

Finding no error, we affirm.

## FACTS

¶2. Billy D. Johnson began employment with J.H. Moon and Sons in 1959 as a carpenter and was eventually promoted to construction superintendent. Moon and Sons primarily engages in the construction of bridges and highway overpasses. In December 1981, Johnson, while working in the scope and course of his employment, was involved in an automobile accident. As a result of the accident, Johnson experienced considerable pain and numbness in his neck, shoulders, arms, and hands. In January of 1982, Johnson sought treatment from Dr. Lucien Hodges of Jackson, Mississippi and later underwent cervical disc fusion surgery that same month. Johnson returned to work, but continued to experience pain in his neck and arms.

¶3. As a result of the continuing pain and discomfort, Johnson traveled to the Tulane Medical Center in New Orleans, Louisiana in May of 1983 and consulted with Dr. Raoul Rodriguez. After an examination, Dr. Rodriguez determined that Johnson's pain and discomfort was caused by the compression of the median nerve due to non-union of the vertebrae in the fusion performed by Dr. Hodges in January of 1982. Dr. Rodriguez further noted that the symptoms experienced by Johnson were indicative of compression of the median nerve in the carpal tunnel, carpal tunnel syndrome. Dr. Rodriguez continued to treat Johnson between 1983 and 1985.

¶4. In December of 1985, Dr. Rodriguez concluded that additional surgery was necessary to correct the non-union of the vertebrae in the cervical spine. The removal of a fragment of disc material and re-fusion of Johnson's vertebrae was performed in January of 1986. Although the surgery performed by Dr. Rodriguez helped to diminish Johnson's pain, Johnson continued to experience numbness in his right arm and hand.

¶5. On June 4, 1987, Judge Joseph Edmund Winston held that Johnson's injuries constituted a compensable injury arising from the December 1981 accident and ordered J.H. Moon and Sons, Inc. and Western Casualty to pay all of Johnson's medical expenses. However, the order did not result in a finding of permanent disability.

¶6. On November 25, 1987, after conducting an electromyogram, Dr. Rodriguez concluded that the earlier diagnosis of carpal tunnel syndrome was correct. Due to the continuing presence of pain Johnson continued to see Dr. Rodriguez, which resulted in approximately 15 follow-up office visits between August 1987 and April 1990. In April 1990, Judge Neil W. White held that the carpal tunnel syndrome experienced by Johnson was related to the December 1981 accident. Johnson was awarded both prior and future medical expenses related to his cervical spine injury.

¶7. Johnson had continued to work for Moon and Sons between the December 1981 accident and July 15,

1993. On this date Dr. Rodriguez concluded that Johnson was totally disabled and unable to return to work. Johnson received temporary total disability benefits from January 25, 1982 to March 7, 1982 at a rate of $112 per week and received wages in lieu of compensation from January 30, 1986 to July 7, 1986. Johnson sustained no additional injuries which aggravated or lightened the injury he sustained in the 1981 accident or that caused or contributed to his current state of disability. All resulting pain and discomfort, including the diagnosis of carpel tunnel syndrome were traced to the original accident in December 1981.

¶8. On May 6, 1996, Administrative Judge Deneise Lott ordered that Johnson was entitled to permanent total disability benefits at the rate of $112 per week for 450 weeks beginning December 2, 1981, the date of the injury, with proper credit for compensation and for wages paid in lieu of compensation. Judge Lott concluded that Liberty Mutual Insurance Company, the workers' compensation carrier as of July 15, 1993, was not liable for any benefits to be paid, and that Western Casualty was solely responsible for payment of Johnson's benefits.

¶9. Johnson filed a motion to reconsider on May 23, 1996. This motion was denied on June 26, 1996 by Judge Lott. The claimant appealed the order to the Full Commission.

¶10. On October 31, 1996, the Mississippi Workers' Compensation Full Commission affirmed the order of Judge Lott and the findings made therein. From that order, Johnson appealed to the circuit court. On August 27, 1997, Circuit Court Judge John B. Toney reversed the Full Commission and awarded Johnson compensation based upon his average weekly wage in 1993. From this order Moon and Sons appeal.

## STANDARD OF REVIEW

¶11. Our standard of review in worker's compensation cases is well settled. We are limited to a determination of whether the Commission's findings of fact and order are supported by substantial evidence. *Marshall Durbin Companies v. Warren*, 633 So. 2d 1006, 1009 (Miss. 1994). Reversal is only warranted when an order of the Workers' Compensation Commission is clearly erroneous and contrary to the overwhelming weight of the evidence. *Hedge v. Leggett & Platt, Inc.*, 641 So. 2d 9, 12 (Miss. 1994).

¶12. "By the same token, when the decision of the Commission is before the circuit court on intermediate appeal, that circuit court may not tamper with the findings of fact, where the findings are supported by a sufficient weight of the evidence." *Natchez Equipment Co. v. Gibbs*, 623 So. 2d 270, 274 (Miss. 1993). Error is committed by the circuit court if it simply supplants its judgment for that of the Commission. *Id*.

¶13. We are mindful of what the court said *Delta CMI v. Speck*, 586 So. 2d 768, 772-73 (Miss. 1991):

> Under settled precedent, courts may not hear evidence in compensation cases. Rather, their scope of review is limited to a determination of whether or not the decision of the commission is supported by the substantial evidence. If so, the decision of the commission should be upheld. The circuit courts act as intermediate courts of appeal. The Supreme Court, as the circuit courts, acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts; . . . "[W]hile appeals to the Supreme Court are technically from the decision of the Circuit Court, the decision of the commission is that which is actually under review for all practical purposes."

> As stated, the substantial evidence rule serves as the basis for appellate review of the commission's order. Indeed, the substantial evidence rule in workers' compensation cases is well established in our law. Substantial evidence, though not easily defined, means something more than a "mere scintilla" of

evidence, and that it does not rise to the level of "a preponderance of the evidence." It may be said that it "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred."

*Id*. (citations omitted).

¶14. In addition, "[w]e are reminded that workers' compensation law is to be liberally and broadly construed, resolving doubtful cases in favor of compensation so that the beneficent purposes of the act may be accomplished." *Marshall Durbin Companies v. Warren*, 633 So. 2d 1006, 1010 (Miss.1994). *See also Miller Transporters, Inc. v. Guthrie*, 554 So. 2d 917, 919 (Miss. 1989); *Reichhold Chemical, Inc. v. Sprankle*, 503 So. 2d 799, 802 (Miss. 1987); *Barham v. Klumb Forest Products Center, Inc.*, 453 So. 2d 1300, 1304 (Miss. 1984). We exercise a *de novo* review on matters of law. *Spann v. Wal-Mart Stores, Inc.*, 700 So. 2d 308 (¶12) (Miss. 1997).

## ANALYSIS

### I.

### THE FULL COMMISSION'S FINDING THAT THE DATE OF THE ORIGINAL INJURY IS THAT WHICH SHOULD BE USED IN CALCULATING THE CLAIMANT'S COMPENSATION BENEFITS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE; THEREFORE, THE REVERSAL BY THE CIRCUIT COURT OF MADISON COUNTY, WAS ERRONEOUS

¶15. Moon and Sons assigns as error the Madison County Circuit Court's reversal of the Mississippi's Workers' Compensation Commission's ruling awarding compensation based upon Johnson's average weekly wage in 1981, the date of his accident. The circuit court reversed the Commission's ruling and awarded compensation to Johnson based upon his average weekly wage in 1993, the date Johnson was declared permanently disabled. Appellants argue that an award based upon the date Johnson was declared permanently disabled is contrary to the law regarding workers' compensation as established by the Mississippi Legislature and cite to Miss. Code Ann. § 71-3-31 (Rev. 1995) in support of their contention.

¶16. Appellants maintain that the express language of Miss. Code Ann. § 71-3-31 controls the resolution of this matter. Appellants cite in pertinent part:

The basis for compensation under this chapter shall be the average weekly wages earned by the employee <u>at the time of injury</u>, such wages to be determined from the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty two weeks immediately preceding the date of injury divided by fifty two.

Miss. Code Ann. § 71-3-31 (emphasis added).

¶17. It is undisputed that in 1981, Johnson was involved in an automobile accident, while in the scope and course of his employment. Further, that as a result of the 1981 accident Johnson sustained injuries which, over time, progressively increased to the point that in 1993 Johnson was no longer able to preform his duties with his employer. In January 1982 Johnson underwent surgery to his cervical spine in an attempted fusion of his vertebrae. Johnson returned to work, but continued to experience pain as a result of the injuries

sustained in the 1981 accident. A second surgery to his cervical spine was performed in January 1986, in which a second fusion of his vertebra was completed. Again, Johnson returned to work, but still continued to experience pain. As a result of the progressive nature of Johnson's injury, he was diagnosed as having carpel tunnel syndrome in 1987. Johnson received intermittent compensation during these periods.

¶18. The question before us today is whether Johnson's injury as a result of a 1981 accident is to be compensated at his average weekly wage in 1981, the time of his accident, or his average weekly wage in 1993, the date he was declared permanently disabled. We hold the latter and begin our analysis by determining the nature of Johnson's injury.

¶19. We begin our discussion with a review of Dunn's treatise on workmen's compensation which reads in pertinent part:

> An accidental injury need not be one which results suddenly from the immediate application of external force. The onset of disability may be gradual and progressive and the ultimate disability may result from the cumulative impact of activities occurring in employment and operating upon the employee's body or his physical weakness or infirmities. . . . The accrual of the disability must relate to a time which is reasonably definite and not remote. . . . A certain fixed and definite event first is required from which time can be calculated. Once a starting point is found for measuring time, a measure which is "reasonably definite and not remote," within the requirement of the rule, is not susceptible of precise definition but must be determined on the facts of each particular case. . . . When the aggravation causes the pre-existing disease to become progressively worse to the point that the employee quits work because of ultimate inability to continue for health reasons, the accidental injury will be deemed to have occurred at the time when the employee quits his job.

DUNN, MISSISSIPPI WORKER'S COMPENSATION § 150, at 177-78 (3d ed. 1990).

¶20. This reasoning has been applied to workers' compensation cases involving an aggravation of a worker's preexisting nonwork related injury. *Miller Transportation, Inc. v. Guthrie*, 554 So. 2d 917 (Miss. 1989). In June of 1982, Guthrie injured his back while cutting grass at his home, a nonwork-related injury. Guthrie subsequently underwent corrective back surgery and was off work for two months. Upon returning to work, Guthrie's back continued to cause him pain and his condition gradually worsened to the point that in April of 1985 he had to quit work. The court held that the repeated trauma of work as a truck driver aggravated his preexisting condition and forced him to quit. Guthrie was awarded benefits and found to have sustained a compensable injury on April 11, 1985, the last day he worked. *Id*. at 918-19.

¶21. Similar holdings by the Mississippi Supreme Court enforce this rationale. The Mississippi Supreme Court has acknowledged, as correctly stated in the circuit court's opinion, that gradual and latent injuries which progress to the point of disability are compensable as of the date the employee is forced to leave his job.

¶22. In *Jenkins v. Olgetree Farm Supply*, 291 So. 2d 560 (Miss. 1974), the Mississippi Supreme Court held that an employee who had a prior history of asthma at the time he was employed and who later suffered an aggravation of his condition due to the constant inhalation of caustic spray or dust from lime or fertilizer suffered an accidental injury. The court held that the injury occurred within a reasonable definite and not too remote period of time. The court went on to concluded that "it can be said that Jenkins' accidental injury occurred at the time he quit his job, after being advised to do so by his doctors." *Id*. at

565.

¶23. In *Pepsi Cola Bottling Co. of Tupelo, Inc v. Long*, 362 So. 2d 182 (Miss. 1978), latent injuries were held to be compensable as of the date the employee is forced to quit work for medical reasons. Long suffered a neck injury in March of 1972, while in the scope and course of his employment. The extent of Long's injury failed to surface until two years after the accident. In deciding the appropriate date to determine Long's compensation, the court ruled that "in latent injury cases the 'date of injury' utilized in determining the average weekly wage means the date of the resultant disabling injury and not the date of the accident. . . ." *Id*. at 186. The court went on to state that "[t]he measure of the earning power of an employee and his correlative loss relates, in our opinion, more to his earnings at the time the loss occurred when he was unable to work rather than at the earlier time of the accident when he was able to continue work, thereby receiving his earnings." *Id*.

¶24. It is undisputed that Johnson suffered a work related accident while in the scope of his employment. Johnson underwent two spinal surgeries to correct damage done as a result of his accident in 1981. Johnson returned to work after the first surgery and continued to work up until 1993, a period of over eleven years. Between the 1981 accident and the ultimate end of his employment in 1993, Johnson received promotions and salary increases for his service to his employer. During this time Johnson's condition gradually and progressively deteriorated to the point that in 1993 he was declared permanently disabled and unable to continue working for his employer.

¶25. After a careful review of the record, we conclude that substantial evidence did not exist to justify the Commission's award of benefits calculated on Johnson's average weekly wage in 1981, the date of the accident. The correct date with which to measure his average weekly wage is the date of permanent disability, July 15, 1993.

## II.

### THE FINDINGS BY THE CIRCUIT COURT OF MADISON COUNTY ESTABLISHED A NEW DATE OF INJURY AND LIBERTY MUTUAL INSURANCE COMPANY, THE CARRIER, ON THIS DATE IN 1993 SHOULD BE RESPONSIBLE

¶26. Moon and Sons argues that the circuit court's ruling created a new date of injury and that as a result, Western Casualty, the original carrier, should not be liable for Johnson's compensation. Moon and Sons argues that by directing the compensation in this case to be paid based on the average weekly wage on July 15, 1993, Liberty Mutual Insurance Company, the successive carrier at that time for Moon and Sons, should be the responsible carrier and not Western Casualty.

¶27. We note that the circuit court failed to address the issue of successive carriers and which of the two carriers should bear liability for the compensation of Johnson. However, since our standard of review is *de novo* and the issue was raised in the original appeal and ruled upon by the full commission, we will address the issue. We also note that neither party, in briefing their arguments to this Court, provided the relevant case law concerning this issue.

¶28. It is undisputed that Johnson is clearly entitled to compensation for the injury he received in the

December 1981 accident and for the resulting progression of the injury which ultimately lead to carpel tunnel syndrome. The medical testimony clearly supports a finding that the resulting pain and numbness experienced by Johnson after the December 1981 accident was a progressive injury, latent in nature, and the sole result of the December 1981 accident.

¶29. The central question in resolving this issue is whether Johnson's awarded compensation should be paid by the appellant-carrier, Western Casualty and Surety Company, or the succeeding carrier, Liberty Mutual Insurance Company. We turn to *Potts v. Lowery*, 242 Miss. 300, 134 So. 2d 474 (Miss. 1961).

¶30. In *Potts* the Mississippi Supreme Court held the liability for benefits awarded rested on the insurer whose policy was in force at the time of the claimant's original injury, rather than on the succeeding carrier, where the disability for which the award was made, together with attendant benefits, resulted from original compensable injury, and were not due to aggravation of a pre-existing condition. H.C. Lowery was employed with Potts Motor Company as a mechanic. On May 24, 1957, Lowery slipped and fell upon a motor while repairing an automobile in the course of his employment at Potts Motor Co. Lowery completed his day's work despite experiencing a "popping" sound in his neck when the accident occurred. Two days later, Lowery entered the hospital complaining of pain and discomfort in his neck. Lowery was diagnosed as having a protruding intervertebral disc that required traction. Lowery was permitted to returned to work after receiving treatment for his injury.

¶31. Between the May 24, 1957 accident and January 5, 1959, Lowery experienced intermittent periods of pain and discomfort resulting from the May 1957 accident. He continued to work except for several periods of hospitalization and treatment. It was held that Lowery's continued suffering of pain and discomfort was a result of the original compensable injury on May 24, 1957 and not the result of an aggravation of a pre-existing condition. Therefore, the appellant-carrier was held liable for Lowery's compensation despite a change in carriers on April 20, 1958.

¶32. Additional holdings in *Singer Co. v. Smith*, 362 So. 2d 590 (Miss. 1978) and *Mid-South Insulation Co. v. Buckley*, 396 So. 2d 7 (Miss. 1981) support holding the original employer-carrier liable rather than the succeeding employer-carrier. Both *Singer* and *Mid-South* involved successive insurance carriers with claimants whose compensable injuries resulted from the exposure or inhalation of harmful lung irritants, abiruana dust and asbestos.

¶33. In *Singer*, Lester Smith was a woodworking machine operator at a furniture plant and was exposed to abiruana dust, a by product of foreign wood named abiruana. Between Smith's first exposure to the abiruana wood in September 1972 and his first diagnosis of chronic obstruction pulmonary disease on April 12, 1973, the plant changed ownership and insurance carriers. In deciding the issue of which employer-carrier was liable for Smith's compensation, the court concluded that the original employer-carrier, Magnavox-Travelers Ins. Co., was liable for Smith's compensable injury where the "disease and resulting disability had manifested itself prior to the change of ownership of the factory and the degree of the injury did not change." *Singer*, 362 So. 2d at 593.

¶34. In addition, the *Singer* court rejected Magnavox's argument that the carrier's compensation liability should attach as of the date the disease was diagnosed. The court stated "[i]n many cases a person can be totally and helplessly disabled before a correct diagnosis can be obtained. Such a rule would totally defeat the purpose of the workmen's compensation statutes." *Id*.

¶35. In *Mid-South*, the widow of Casey Buckley sought death benefits under Mississippi Workmen's Compensation Act after Buckley died from lung cancer precipitated and caused by the inhalation of asbestos while employed with Mid-South Insulation Company. Buckley began employment with Mid-South in 1957 and worked until August 1967 when his health condition required him to cease employment with Mid-South. During his employment he was exposed to asbestos everyday. By the early 1960's Buckley had begun to experience lung and breathing difficulties; however, the cause of his ailments was unknown. It was not until June 1975 that Buckley's lung and breathing difficulties progressed to the point that his medical doctors concluded that an open chest operation was necessary to make a diagnosis of his disease. After surgery, Buckley was diagnosed with asbestos scarring on the pleural surface of the lungs. Buckley failed to improve and died shortly thereafter.

¶36. The court concluded that where a claimant's disability and disease manifested itself early in the 1960's, but the cause of the disability and disease manifestation was not diagnosed until after the claimant ended his employment, the employer's carrier during the period of exposure is liable for claimant's compensation benefits despite the presence of a successive carrier at the time when the claimant was forced to end his employment. *Mid-South*, 396 So. 2d at 10-11.

¶37. Finally, we return to Dunn's treatise on workmen's compensation on the question of carrier liability :

> As to the question of the existence of liability, it is well settled that the first or originating employer is exclusively liable when the recurrence of disability is solely attributable to the original injury, but that the subsequent employer or carrier is exclusively liable where the second disability has no casual relation whatever with the original injury.

DUNN, MISSISSIPPI WORKER'S COMPENSATION § 188, at 237 (3d ed. 1990) (footnotes omitted).

¶38. It is readily apparent that the gradual and progressive injury, latent in nature, suffered by Johnson and the ultimate diagnosis of carpel tunnel syndrome were the results of the 1981 accident. The existence of any subsequent aggravation or re-injury which would constitute a new injury has not been shown. All indications show a compensable injury with gradual and progressive deterioration characteristics, indicative of a change in the original condition rather than a new injury, resulting in a subsequent disability stemming from the original accident in 1981. Absent some connecting event to show a casual relationship between the ultimate disability and a second disability or new injury after the change in carriers, we conclude that Western Casualty, the first carrier, is liable for Johnson's compensation benefits based on his average weekly wage on July 15, 1993, the date he was forced to leave his employment for health reasons.

¶39. **THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**BRIDGES, C.J., DIAZ, KING, AND PAYNE, JJ., CONCUR. SOUTHWICK, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, P.J. AND COLEMAN, J. IRVING AND LEE, JJ., NOT PARTICIPATING.**

SOUTHWICK, J., dissenting

¶40. With respect for the view of the majority, I find that the Workers' Compensation Commission properly interpreted the controlling statute. Therefore in my view the circuit court's reversal of that decision was error.

¶41. The issue is simple and also important. Should benefits be awarded based on the 1993 wages when the worker was held to be permanently disabled, or instead based on 1981 wages when the injury occurred? The statutory language explicitly addresses the question:

> Except as otherwise specifically provided, the basis for compensation under this chapter shall be the average weekly wages earned by the employee at the *time of the injury*, such wages to be determined from the earnings of the injured employee in the employment in which he was working at the time of the injury . . . .

Miss. Code Ann. § 71-3-31 (Rev. 1995) (emphasis added). The Commission relied upon the plain meaning of the phrase "time of the injury" and held that the wages earned when the 1981 injury occurred were the relevant ones.

¶42. The majority rejects this meaning on two grounds. One is by relying upon "latent injury" case law. The problem with its applicability is that there was nothing latent about the injury. The employer and the claimant knew from the beginning that this was an industrially disabling injury. This is not a situation in which an event occurs at work that initially appears benign but later proves to have been the start of an industrially disabling problem. *Pepsi Cola Bottling Co. v. Long*, 362 So. 2d 182, 183 (Miss. 1978).

¶43. The second argued analogous case law addresses apportionment between pre-existing non-work related injuries and a job-related injury. *Miller Transportation, Inc. v. Guthrie*, 554 So. 2d 917, 919 (Miss. 1989). Such case law is a means to permit compensation for the workplace contribution to what otherwise is not a job-related injury. Here, the entire injury is job-related. The statutory language simply does not provide for compensation based on date of most severe effect of injury.

¶44. Other statutory sections emphasize the focus on the date of injury. The two most applicable are these:

> "Disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.

Miss. Code Ann. § 71-3-3(i) (Rev. 1995); and

> "Wages" includes the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of injury. . . .

Miss. Code Ann. § 71-3-3(k) (Rev. 1995).

¶45. This was not a latent injury nor a work-related aggravation of a non-work injury, but a different category altogether. It is a work-related injury that is known to be industrially-disabling from the beginning, worsens over time, and eventually develops into a total disability.

¶46. The inequity of the case is that so much time passed and such a change in wage occurred. The Commission agreed that the claimant's "average weekly wage on the date that he became permanently disabled is a better measure of his earning power and correlative loss of earning power than his average weekly wage on the date of injury." I acknowledge the validity of the majority's statements about the sympathetic reading that we are to give to the statute consistent with its beneficent purposes. With sincere

respect, I find what has occurred here to be a sympathetic rewriting of the plain language of the statute.

¶47. Moreover, there are equity risks and policy choices under both the majority and the Commission's results. Under the Commission's view the worker receives lower compensation if the disability becomes total, but under the majority's view the employer may be less willing to maintain an injured worker on the normal promotion track while the disability is only partial. Regardless of whether the legislature was contemplating these reasons, the statutory language plainly chooses.

¶48. Until a statutory change is made, I find that the Commission's interpretation is correct. I therefore dissent.

**McMILLIN, P.J. AND COLEMAN, J., JOIN THIS SEPARATE OPINION.**