788 So.2d 106 (2001)
Florence M. MOORE, Appellant,
v.
INDEPENDENT LIFE AND ACCIDENT INSURANCE COMPANY and American Motorists Insurance Company, Appellees.
No. 2000-WC-00005-COA.
Court of Appeals of Mississippi.
June 12, 2001.
*108 James Kenneth, Wetzel Mariano, Javier Barvie', Gulfport, Attorneys for Appellant.
Walter J. Eades, Gulfport, Attorney for Appellees.
Before McMILLIN, C.J., IRVING, and CHANDLER, JJ.
CHANDLER, J., for the Court:
¶ 1. This is an appeal from a decision of the Harrison County Circuit Court affirming the Workers' Compensation Commission's decision that Florence Moore is entitled to benefits due to a fall she sustained on the property of her former employer, Independent Life Insurance. Moore appeals citing the following issues:
I. WHETHER THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION ERRED AS A MATTER OF LAW IN FINDING THE CLAIMANT'S SECOND CERVICAL NECK SURGERY OF DECEMBER 1992 WAS NOT RELATED TO HER INDUSTRIAL ACCIDENT OF JANUARY 23, 1990.
II. WHETHER THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION ERRED AS A MATTER OF LAW IN FINDING THE CLAIMANT WAS ENTITLED TO PERMANENT PARTIAL DISABILITY BENEFITS IN THE AMOUNT OF ONLY $25 PER WEEK.
Independent Life cross-appeals citing the following issues:
I. THE COMMISSION ERRED AS A MATTER OF LAW IN FINDING MOORE'S CONDITION IN SEPTEMBER 1991 TO BE CAUSALLY RELATED *109 TO THE JANUARY 1990 INCIDENT, AND ITS FINDING WAS NOT BASED UPON SUBSTANTIAL EVIDENCE.
II. THE COMMISSION ERRED AS A MATTER OF LAW IN AWARDING PERMANENT PARTIAL DISABILITY BENEFITS AND ITS DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.
We affirm in part and reverse and render in part.

FACTS
¶ 2. The record reveals that on January 23, 1990, while Moore was employed as an insurance debit agent for Independent Life and Accident Insurance Company in Greenville, Mississippi, she slipped and fell on an icy parking lot at work. She first sought medical treatment on February 12, 1990, when she saw Dr. Barr for pain in her shoulder radiating down her arm. Dr. Barr took x-rays, administered a steroid shot and told Moore her problem was arthritis. Though she was scheduled to return, Moore did not see Dr. Barr again. She continued to work.
¶ 3. At the end of March 1990, Moore was granted a requested transfer to the employer's Mississippi Gulf Coast office and moved to Gulfport. She sought no further medical care until an emergency room visit to Memorial Hospital at Gulfport on August 30, 1990. The history she gave on that occasion was of pain for two to three weeks. Moore reported no trauma and gave no history of any fall, nor did she relate the problem to work. The recorded information of the emergency room visit includes notes that Moore denied trauma. But the report also reflects that Moore reported that she saw a doctor in February for a cortisone injection in her shoulder. Moore told the emergency room physician, Dr. Stribling, that she had experienced one prior episode of pain similar to the present pain she was experiencing. Dr. Stribling took x-rays which showed an inflammatory process around the nerve root which he found compatible with either trauma or degenerative condition. Although Dr. Stribling referred Moore to neurosurgeon Dr. Richard Buckley, Moore never saw Dr. Buckley because she said it took too long to get an appointment with him.
¶ 4. Moore continued working regularly and sought no further medical care until almost a year later, when she went to Dr. Diane Ross in July 1991. Dr. Ross did not testify in this case, but Moore says Dr. Ross also referred her to Dr. Buckley. The record does not reveal the date of this referral. Moore did not schedule an appointment with Dr. Buckley as Dr. Ross recommended for the same reason; it took too long to get in to see him.
¶ 5. Moore stopped working September 5, 1991. She applied for workers' compensation benefits and was awarded benefits until November 17, 1991. Payment of benefits was apparently discontinued based upon reports of other physicians whom the workers' compensation carrier required that Moore see. These physicians were orthopedic surgeon Dr. Charles Winters and neurosurgeon Dr. Victor Bazzone.
¶ 6. When Dr. Winters saw Moore on September 25, 1991, her complaints were of neck pain, and pain in the left arm and shoulder which she said began when she fell on January 23, 1990. Dr. Winters concluded Moore's neurological exam was normal, and he found nothing indicating a herniated disc, pinched nerve, etc., "as would be expected with a history of trauma." Based on his examination, a myelogram and CT study, Dr. Winters found Moore had arthritis in her cervical spine, and evidence of degenerative disc disease at C4-5, C5-6 and C6-7. The radiology *110 notes revealed spondylosis, or degenerative disc disease. Dr. Winters saw Moore only on one other occasion, October 10, 1991, to discuss his findings and recommend treatment. In Winter's opinion, Moore's condition was not caused by trauma, but a fall could aggravate her condition.
¶ 7. Dr. Bazzone saw Moore November 17, 1991, at which time Moore reported complaints of pain in her left shoulder, shoulder blade and down her left arm. After examining Moore and reviewing her history of medical treatment, Dr. Bazzone found Moore's spondylosis was a longstanding problem which was not caused by the fall, and that the fall did not cause any permanent aggravation of the condition because Moore was not "getting medical treatment constantly." Dr. Bazzone agrees Moore could have been asymptomatic the rest of her life had the fall not occurred, but says the fall caused, at most, a temporary aggravation of the condition.
¶ 8. On September 17, 1991, Moore sought treatment from Dr. Danielson. Her primary complaint was of pain in the neck, the left shoulder, shoulder blade, down the left arm to the wrist and numbness and tingling of the left hand and fingers. Moore gave Dr. Danielson a history of the January 1990 fall. Dr. Danielson's final diagnosis was spondylosis at multiple levels and a herniated disc. Dr. Danielson found there was a causal connection between Moore's fall and her herniated disc, but not her spondylosis.
¶ 9. After treating Moore conservatively with a cervical collar and physical therapy, Dr. Danielson recommended cervical fusion of C5-6 and C6-7 on January 1, 1992. He performed the surgery on February 7, 1992.
¶ 10. In his deposition of October 19, 1992, Dr. Danielson testified that Moore was temporarily, totally disabled from September 17, 1991 until May 5, 1992, when she reached maximum medical improvement. Dr. Danielson assigned Moore a 14% physical impairment rating and restricted her from rapid frequent head/neck movements, prolonged extension of the head in overhead work, climbing ladders, etc. Dr. Danielson assigned 2/3 of the 14% impairment rating to the herniated disc and 1/3 to her non-work related pre-existing condition. According to Dr. Danielson, Moore was able to drive and she could return to her job as an insurance agent, with the exception of lifting heavy boxes. But Moore said she was unable to perform her duties as an insurance debit agent.
¶ 11. Dr. Danielson performed additional cervical surgery December 11, 1992. In his deposition of August 1993, Dr. Danielson revised his earlier opinion and said Moore reached maximum medical improvement on May 11, 1993. Although Dr. Danielson said disc disease predisposes one to herniated discs, he testified that Moore's second surgery, like the first surgery was causally related to her work injury.
¶ 12. Following the second surgery, Dr. Danielson increased Moore's impairment rating to 19%. He did not restrict Moore from returning to work as an insurance agent.
¶ 13. The administrative judge ruled on October 12, 1993, that Moore was temporarily partially disabled from January 23, 1990 until February 23, 1990, when she went to the doctor, and fixed maximum medical improvement at February 23, 1990, because Moore failed to return to the doctor or seek other treatment. The administrative judge ordered the employer and carrier to pay Moore's medical expenses only through the February 1990 doctor's visit, ruling that nothing subsequent to that date was related to Moore's on-the-job injury. The administrative *111 judge assessed no loss of wage earning capacity despite Dr. Danielson's 19% permanent impairment rating, based on Dr. Danielson's report which released Moore to return to her job as an insurance agent.
¶ 14. Moore appealed, and on February 17, 1994, the Mississippi Workers' Compensation Commission amended the administrative judge's order to place maximum medical improvement at May 5, 1992. The Commission remanded the matter to the administrative judge for determination of loss of wage-earning capacity. Both parties sought clarification of the Commission's order, leading to an amended order entered April 11, 1994, in which the Commission stated: (1) it affirmed the administrative judge's finding on compensability; but (2) amended the period of temporary disability to May 5, 1992; and (3) held the employer and carrier's liability for medical expenses ended upon Moore's release to return to work by Dr. Danielson on May 5, 1992; and (4) held the second surgery was not related to the industrial accident of January 1990, relieving the appellees of liability for expenses associated with the December 11, 1992 surgery. The Commission held that Moore was entitled to compensation benefits (and penalties) for the periods she was unable to work during her partial disability from January 23, 1990 until May 20, 1992, with credit to be given the employer/carrier for wages earned and benefits paid. The amended order again remanded the matter to the administrative judge for findings on loss of wage-earning capacity.
¶ 15. Following the hearing on remand, the administrative judge held that Moore had not proven any loss of wage-earning capacity. The administrative judge found Moore had made no serious effort to obtain work where work was available, and had failed to show that she made reasonable efforts to return to her job as an insurance agent. Both parties appealed to the Full Commission.
¶ 16. On August 28, 1996, the Commission entered its unanimous decision, holding that Moore made no attempt to return to work for her employer, stating the only question to resolve was whether Moore made reasonable efforts to secure other gainful employment. The Commission noted Moore did not begin her search for employment in earnest until early 1994, and that she always gave those with whom she was applying for work a copy of a letter from Dr. Danielson to her lawyer describing Moore's medical problems. The Commission concluded:
While we certainly harbor doubts as to the reasonableness of the claimant's efforts, we feel nonetheless that the whole of her efforts, in combination with the medical impairment and restrictions resulting from her injury and surgery, justify an award for permanent disability in the minimum allowed by law.
¶ 17. The Commission reversed the administrative judge and awarded Moore the minimum $25 per week for 450 weeks plus penalties and interest. Both parties appealed to the circuit court.
¶ 18. The circuit court requested clarification from the Commission as to whether the Commission found Moore's efforts to obtain employment reasonable and, if so, why the Commission awarded Moore the minimum amount of benefits. The Commission responded to the circuit court's request for clarification stating that while Moore's attempts to find other employment were "questionable, they were nonetheless reasonable enough to pass muster and to support an award of permanent disability benefits." The circuit court then affirmed based on the prescribed standard of review.

*112 LAW AND ANALYSIS

1. Whether the trial court erred in finding a sufficient causal connection between the injury and the accident for treatment occurring between January 1990 and May 1992.
¶ 19. In a workers' compensation case, the claimant bears the burden of proving by a "fair preponderance of the evidence" each element of the claim. Bracey v. Packard Elec. Div., Gen. Motors Co., 476 So.2d 28, 29 (Miss.1985). These elements are: (1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability. Miss.Code Ann. §§ 71-3-3 & -7 (Rev.2000); V. DUNN, MISSISSIPPI WORKERS' COMPENSATION § 265 (3d ed.1982); see also Strickland v. M.H. McMath Gin, Inc., 457 So.2d 925, 928 (Miss.1984).
¶ 20. The Commission is the ultimate fact-finder. Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss.1985); Valley Dry Goods Co. v. Odom, 244 Miss. 125, 127, 141 So.2d 254, 256 (1962). Accordingly, the Commission may accept or reject an administrative judge's findings. Day-Brite Lighting Div., Emerson Elec. Co. v. Cummings, 419 So.2d 211, 213 (Miss.1982). "Doubtful cases should be resolved in favor of compensation, so as to fulfill the beneficial purposes" of statutory law. Miller Transporters, Inc. v. Guthrie, 554 So.2d 917, 918 (Miss.1989) (citing authoritative support).
¶ 21. If the Commission's fact-findings are "supported by substantial evidence," then they "`must' remain undisturbed by the reviewing court." R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1021 (Miss.1990) (quoting Myles v. Rockwell Int'l, 445 So.2d 528, 536 (Miss.1983)). Of great import, fact-findings supported by substantial evidence must remain undisturbed "even though that evidence would not convince us" were this Court the factfinder. Chandler, 475 So.2d at 439 (citing South Cent. Bell Tel. Co. v. Aden, 474 So.2d 584, 589-90 (Miss.1985)); see also Hernandez, 555 So.2d at 1021-22.
¶ 22. Even though the testimony may be somewhat ambiguous as to causal connection, all that is necessary is that the medical findings support a causal connection. Sperry-Vickers, Inc. v. Honea, 394 So.2d 1380, 1385 (Miss.1981).
¶ 23. Independent Life argues that because Moore did not seek medical treatment for one year after the accident, did not mention the accident to the doctor initially, and was able to continue her regular work schedule, there is no substantial factual evidence on which to base the Commission's finding of a causal connection between the accident and injury.
¶ 24. The doctors testifying on behalf of Independent Life, Dr. Winters and Dr. Bazzone, testified that Moore had not sustained a permanent, serious injury. But, Moore's treating physician, Dr. Danielson, testified that Moore did sustain a serious injury. Independent Life argues that the Commission should have given more weight to the testimony of their doctors than to the testimony of Moore's treating physician. Independent Life urges this Court to conduct a de novo review of the evidence because an improper legal standard was applied in that the Commission reasoned that there was a causal connection because Moore did not fail to report to work due to her spinal condition before the accident. In response, Moore reminds the Court of the standard of review and disputes Independent Life's claim that there was not substantial evidence on which to base a finding of causal connection. The Mississippi Supreme Court ruled on the issue of conflicting *113 testimony stating: "Where medical expert testimony is concerned, this Court has held that whenever the expert evidence is conflicting, the court will affirm the commission whether the award is for or against the claimant." Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 268 (Miss.1966). The Commission, as factfinder, is entitled to weigh the competing testimonies and render its decision accordingly, provided that the acceptance of the testimony over that of the other did not result in a decision which was clearly erroneous. Baugh v. Central Miss. Planning and Dev., 740 So.2d 342 (¶ 8) (Miss.Ct.App. 1999). Pursuant to Mississippi's public policy in workers' compensation cases, doubtful cases must be resolved in favor of compensation, so as to fulfill the beneficent purposes of the statute. Reichhold Chem. Inc. v. Sprankle, 503 So.2d 799, 802 (Miss. 1987).
¶ 25. In this case, there was conflicting medical testimony as to whether a causal connection existed between Moore's injury and her accident. It is not this Court's duty to re-weigh the testimony. The Commission's finding that there was a causal connection was not clearly erroneous. The correct legal standard was applied in that the medical finding of Dr. Danielson did support a finding of causal connection. Therefore, we affirm the lower court's finding that there was a causal connection between Moore's accident in the parking lot of Independent Life and her injury.

2. Whether the commission erred in finding there was not sufficient causal connection between the injury and treatment occurring after May 1992, specifically the December 1992 surgery.
¶ 26. As for the Commission's finding that there was no causal connection between Moore's accident and her second surgery in December of 1992, we find that the Commission erred. While Drs. Winters and Bazzone essentially testified that there was no causal connection between Moore's injury and her accident, neither doctor specifically addressed her second surgery of December 1992. Moore's treating physician, Dr. Danielson, who performed both of her surgeries, testified in October of 1992 that he projected that Moore would reach maximum medical improvement in May of 1992. In August of 1993, Dr. Danielson testified that Moore did not reach maximum medical improvement until May 11, 1993.
¶ 27. In McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 169 (Miss.1991), the treating physician reassessed the claimant's condition and found that the date for maximum medical improvement had changed. The Court resolved the conflict in the treating physician's testimony in the claimant's favor.
¶ 28. In this case, Dr. Danielson's testimony was accepted by the Full Commission pertaining to the first surgery and the initial date of maximum medical improvement. The Commission, then, denied Moore benefits for the second surgery and never addressed Dr. Danielson's testimony that the second surgery was necessary and stemmed from Moore's work-related injury. It is implausible to deny the treating physician the right to reassess Moore's condition, as her treatment was ongoing. We find that decision to be in error.
¶ 29. The denial of benefits for the second surgery is not based on the substantial evidence. Because the Commission accepted Dr. Danielson's testimony regarding the first surgery, there is no reason why the Commission would ignore Dr. Danielson's testimony as to the second surgery. Dr. Danielson is the only witness who testified about the second surgery. *114 We resolve this issue pursuant to Miller Transporters, Inc. v. Guthrie, 554 So.2d 917, 918 (Miss.1989), which instructs us as to the beneficent purpose of workers' compensation. As to this issue, we reverse and render finding that there was a causal connection between Moore's accident and the second surgery performed in December of 1992.

3. Whether Moore suffered a permanent partial disability.
¶ 30. Moore argues that her award of the statutory minimum of permanent partial disability benefits is too low and on cross-appeal, Independent Life argues that she should not have been awarded permanent partial disability at all and that the statute requires the claimant to first try to return to the same employment, then try to find other work to prove they deserve an award of benefits.
¶ 31. Disability is defined as incapacity due to injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment. Miss.Code Ann. § 71-3-3(i) (Rev.2000). When there is a finding of permanent partial disability, the claimant bears the burden of making a prima facie showing that he has sought and been unable to find work in the same or other employment. Coulter v. Harvey, 190 So.2d 894, 897 (Miss.1966); Miss Code Ann. § 71-3-3(i) (Rev.2000). The factors to consider in deciding whether the claimant has made an attempt to find employment (a prima facie case of disability) are: (1) economic and industrial aspects of the local community, (2) the jobs available in the community, and (3) the claimant's general educational background, including work skills and the particular nature of the disability for which compensation is sought. Thompson, 362 So.2d at 640. After the claimant makes out a prima facie case of disability, the burden of proof shifts to the employer. The employer must then present evidence showing that the claimant's efforts to obtain other employment were a mere sham, or less than reasonable, or without proper diligence. Id. at 641.
¶ 32. In response to the circuit court's request for clarification, the Commission stated that while Moore's attempts to find other employment were "questionable, they were nonetheless reasonable enough to pass muster and to support an award of permanent disability benefits." The Commission is the trier of fact and based on its findings, this Court is bound by those findings. Therefore, the Commission's finding that Moore suffered a permanent partial disability should be upheld.

4. Whether the commission erred in awarding Moore the statutory minimum of permanent partial benefits.
¶ 33. The Commission awarded Moore $25 a week for 450 weeks. When the degree of disability in relation to wage earning capacity or degree of contribution to disability on account of a pre-existing infirmity is at issue, the rule is that the Commission is not necessarily bound by either medical or lay testimony but may reach its decision on the evidence as a whole and in this respect is allowed considerable discretion and latitude. DUNN, MISSISSIPPI WORKERS' COMPENSATION § 274. Furthermore,
The determination of the degree of disability, whether permanent or temporary, is essentially one of fact. In resolving the question, there are generally two ingredients which combine to produce the result. These are (1) Actual physical injury, and (2) Defacto loss of wage earning capacity. The commission is not confined to a consideration of *115 medical or functional impairment produced by the injury but has the power and duty to evaluate other evidence relating to the stated facts and to determine the issue from the evidence as a whole. Dunn, § 79.
¶ 34. The record in this case reflects that Moore is a well-educated person with a variety of work experience in jobs not requiring heavy manual labor. Moore's treating physician testified that her restrictions did not prohibit her from returning to her former employment. Despite this evidence, Moore testified that, because of the pain associated with her back injuries, she could not perform the normal and customary duties of her insurance agent job. The Commission concluded that, as to this issue, Moore's testimony had greater persuasive weight, and we are obligated to give deference to that finding of fact. Hernandez, 555 So.2d at 1021. As to the second aspect of a disability determination based on an injury not involving a scheduled member, it is proper for the Commission to consider Moore's diligence in its efforts to determine the extent of Moore's permanent disability awarding minimal permanent partial disability benefits. Hale v. Ruleville Health Care Center, 687 So.2d 1221, 1227 (Miss. 1997). We affirm the lower court's holding on this issue.
¶ 35. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT DENYING MOORE BENEFITS FOR HER SECOND SURGERY OF DECEMBER 1992 IS REVERSED AND RENDERED. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED ON ALL OTHER ISSUES. COSTS OF THIS APPEAL ARE EQUALLY ASSESSED TO APPELLANT AND APPELLEES.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING and MYERS, JJ., concur.